## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

———————————————————

|  |  |  |
|---|---|---|
| SPEAR PHARMACEUTICALS, INC., and SPEAR DERMATOLOGY PRODUCTS, INC., | ) ) ) ) | Civil Action No. 07-821-JJF |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| WILLIAM BLAIR & COMPANY, L.L.C., and VALEANT PHARMACEUTICALS INTERNATIONAL, | ) ) ) ) | |
| Defendants. | ) ) | |

———————————————————

## PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO THE MOTION TO DISMISS OF DEFENDANT VALEANT PHARMACEUTICALS INTERNATIONAL

Jack B. Blumenfeld (#1014)
Rodger D. Smith, II (#3778)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
rsmith@mnat.com

*Counsel for Plaintiffs Spear*
*Pharmaceuticals, Inc. and Spear*
*Dermatology Products, Inc.*

*Of Counsel:*

Steven Lieberman
Jason M. Shapiro
Lisa N. Phillips
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
1425 K Street, N.W.
Suite 800
Washington, DC  20005
(202) 783-6040

September 2, 2008

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................... iii

NATURE AND STAGE OF THE PROCEEDING.......................................................1

SUMMARY OF ARGUMENT ..................................................................................2

STATEMENT OF FACTS ..........................................................................................7

      A.     The Efudex® Product and Spear's Development of Its Generic
           Efudex® fluorouracil Product...................................................................7

      B.     Spear's Engagement of Blair to Locate a Buyer for the
           Tretinoin Product Line..............................................................................8

      C.     Spear's Communication of Trade Secrets and Confidential
           Information to Blair ..................................................................................9

      D.     Defendants' Relationship and Valeant's Evaluation of the Proposed
           Transaction.............................................................................................10

      E.     Valeant's Filing of its Citizen Petition ..................................................11

      F.     The Citizen Petition Process ...................................................................12

      G.     Activity Since Valeant Filed its Citizen Petition....................................14

ARGUMENT .............................................................................................................15

I.     PLAINTIFFS' ALLEGATIONS MEET THE REQUIREMENTS OF
      FED. R. CIV. P. 8(a)...........................................................................................15

      A.     The Requirements of Fed. R. Civ. P. 8(a)...............................................15

      B.     Each of the Arguments Offered by Valeant Ignores Substantial
           Portions of the Supplemental Complaint and Is Based on an Improper
           Application of Fed. R. Civ. P. 8(a)(2) ...................................................16

II.    VALEANT'S USE OF SPEAR'S CONFIDENTIAL INFORMATION AS
      THE BASIS FOR FILING ITS CITIZEN PETITION WAS A DIRECT AND
      PROXIMATE CAUSE OF THE ALLEGED INJURY....................................21

## **TABLE OF CONTENTS (cont'd)**

**Page**

A.    The Applicable Causation Standards ...................................................21

B.    Spear's Injury was Proximately Caused by Valeant's Actions
      in Using Spear's Confidential Information as the Basis for its
      Citizen Petition ..........................................................................22

III.   THIS COURT HAS SUBJECT MATTER JURISDICTION OVER EACH
       OF THE CLAIMS ASSERTED AGAINST VALEANT .................................29

A.    The Requirements of Fed. R. Civ. P. 12(b)(1).................................29

B.    Spear Has Standing to Bring Each of its Claims Against Valeant .......30

      1.    The Applicable Legal Standard ...............................................30

      2.    Under the Proper Standard, Spear Has Standing to Bring
            Each of its Claims Against Valeant ..........................................31

IV.    VALEANT'S PRE-PETITIONING WRONGDOING RENDERS THE
       PROTECTIONS OF THE NOERR-PENNINGTON DOCTRINE
       UNAVAILABLE.................................................................................32

A.    The Noerr-Pennington Doctrine Does not Bar Spear's Claims............32

B.    The First Amendment Does Not Provide a Shield Protecting Valeant
      from the Consequences of Improperly Using Spear's Confidential
      Information ...............................................................................34

V.     UNDER THIRD CIRCUIT PRECEDENT, EVEN IF THE SUPPLEMENTAL
       COMPLAINT WERE SUBJECT TO DISMISSAL, THIS COURT SHOULD
       PERMIT SPEAR TO AMEND THE SUPPLEMENTAL COMPLAINT .............36

CONCLUSION.............................................................................................36

## TABLE OF AUTHORITIES

**Cases**                                                                        **Page**

*Allied Tube & Conduit Corp. v. Indian Head*, 486 U.S. 492 (1988) .............................................33

*Alston v. Parker*, 363 F.3d 229 (3d Cir. 2004) .........................................................................36

*Barr Labs., Inc. v. Quantum Pharmics, Inc.*, 827 F. Supp. 111 (E.D.N.Y. 1993)..................27, 28

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ............................................................ *passim*

*Bennett v. Spear*, 520 U.S. 154 (1997) ...................................................................................31

*Black & Decker Inc. v. Pro-Tech Power Inc.*,
    No. 97-1123, 1997 U.S. Dist. LEXIS 23999 (E.D. Va. Dec. 23, 1997) ...........................34

*Buenrostro v. Collazo*, 973 F.2d 39 (1st Cir. 1992)....................................................................27

*California Motor Transp. Co. v. Trucking Unlimited*,
    404 U.S. 508, 92 S. Ct. 609, 30 L.E.2d 642 (1972).......................................................7, 33

*Chevalier v. Animal Rehab. Ctr.*, 839 F. Supp. 1224 (N.D. Tex. 1993)......................................35

*Cherne Indus., Inc. v. Grounds & Assocs., Inc.*, 278 N.W.2d 81 (Minn. 1979)..........................35

*City of Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S. 365 (1991) ......................................33

*Cohen v. Cowles Media Co.*, 501 U.S. 663 (1991)...........................................................6, 34, 35

*Conley v. Gibson*, 355 U.S. 41 (1957) ......................................................................................15

*Culver v. Bennett*, 588 A.2d 1094 (Del. 1991) ...........................................................................21

*Delaware Elec. Co-Op v. Duphily*, 703 A.2d 1202 (Del. 1997)......................................................5

*Dow Chem. Co. v. Exxon Corp.*, 30 F. Supp. 2d 673 (D. Del. 1998) ......................................28, 29

*Dr. Reddy's Labs., Ltd. v. aaiPharma Inc.*, 66 U.S.P.Q.2d 1878 (S.D.N.Y. 2002) ...............24, 25

*Duphily v. Delaware Elec. Co-Op., Inc.*, 662 A.2d 821 (Del. 1995)................................21, 22, 23

*Duquesne Light Co. v. U.S. EPA*, 166 F.3d 609 (3d Cir. 1999) ...................................................31

## <u>TABLE OF AUTHORITIES (cont'd)</u>

**Cases**                                                                   **Page**

*Egervary v. Young*, 336 F.3d 238 (3d Cir. 2004), *cert. denied*, 543 U.S. 1049 (2005) ................27

*Eli Lilly & Co. v. Am. Cyanamid Co.*, No. 95-536, 2001 U.S. Dist. LEXIS 212
     (S.D. Ind. Jan. 1, 2001) ...........................................................................................24, 26

*Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460 (D. N.J. 1998) ......................................28, 32

*Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263 (11th Cir. 2003) ..........30

*Ford Motor Co. v. Lane*, 67 F. Supp. 2d 745 (E.D. Mich. 1999) ...................................................35

*Hartford Fire Ins. Co. v. Interdigital Communs. Corp.*, 464 F. Supp. 2d 375
     (D. Del. 2006) ....................................................................................................................29

*Hector v. Watt*, 235 F.3d 154 (3d Cir. 2000) ..............................................................................27

*Homsey v. Vigilant Ins. Co.*, 496 F. Supp. 2d 433 (D. Del. 2007) ........................................ *passim*

*Hurley v. Minner*, No. 05-826, 2006 U.S. Dist. LEXIS 69090 (D. Del. Sept. 26, 2006) ........29, 30

*In re IBP Confidential Bus. Documents Litig.*, 755 F.2d 1300 (8th Cir. 1985) ............................35

*In re Intel Corp. Microprocessor Antitrust Litig.*, 496 F. Supp. 2d 404 (D. Del. 2007) ....... *passim*

*In re Student Fin. Corp.*, No. 03-507, 2004 U.S. Dist. LEXIS 4952
     (D. Del. Mar. 23, 2004) .....................................................................................................16

*In re Wellbutrin SR/Zyban Antitrust Litig.*, 281 F. Supp. 2d 751 (E.D. Pa. 2003) .................24, 25

*Kerman v. City of New York*, 374 F.3d 93 (2d Cir. 2004) ............................................................27

*Kost v. Kozakiewicz*, 1 F.3d 176 (3d Cir. 1993) ...........................................................................3

*LeBlanc-Sternberg v. Fletcher*, 781 F. Supp. 261 (S.D.N.Y. 1991) .............................................34

*Livingston Downs Racing Ass'n Inc. v. Jefferson Downs Corp.*,
     192 F. Supp. 2d 519 (M.D. La. 2001) ...........................................................................6, 33

*Louisiana Wholesale Drug Co. v. Sanofi-Aventis*,
     No. 07-7343, 2008 U.S. Dist. LEXIS 3611 (S.D.N.Y. Jan 18, 2008) ..............................32

## TABLE OF AUTHORITIES (cont'd)

**Cases**                                                                                  **Page**

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...............................................30, 31

*McDonald v. Smith*, 472 U.S. 479 (1985)...................................................................34

*Mercatus Group LLC v. Lake Forest Hosp.*, 527 F. Supp. 2d 797 (N.D. Ill. 2007)..................7, 33

*Murray v. Fairbanks Morse*, 610 F.2d 149 (3d Cir. 1979)............................................30

*Pfizer v. Ranbaxy Labs. Ltd.*, 525 F. Supp. 2d 680 (D. Del. 2007) ................................3

*Phifer v. E.I. du Pont de Nemours & Co.*, No. 03-0327, 2004 U.S. Dist. LEXIS 10727
    (D. Del. June 7, 2004), *aff'd*, 2005 U.S. App. LEXIS 13489 (3d Cir. 2005) .............22, 23

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)............................................. *passim*

*Pitt News v. Fisher*, 215 F.3d 354 (3d Cir. 2000), *cert. denied*, 541 U.S. 1113 (2001) ..........30, 31

*Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315 (5th Cir. 2002)........................................31

*Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*,
    562 F.2d 1157 (9th Cir. 1977) .......................................................................34

*Snepp v. United States*, 444 U.S. 507 (1980)................................................................34

*Tizes v. Curcio*, No. 94-7657, 1995 U.S. Dist. LEXIS 11368 (N.D. Ill. Aug. 9, 1995) ...............34

*Valeant Pharms. Int'l v. Leavitt*, No. 08-00449 (C.D. Cal.)...........................................2

*Warner v. Orange County Dep't of Prob.*, 115 F.3d 1068 (2d Cir. 1996) ...................................27

*Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000).............................................................27

**Statutes and Rules**

21 U.S.C. § 355......................................................................................................13, 23

Food and Drug Administration Amendments Act of 2007 § 914(a) ............................................13

153 Cong. Rec. S64 (daily ed. Jan. 4, 2007)................................................................13

153 Cong. Rec. S65 (daily ed. Jan. 4, 2007)................................................................13, 14

## TABLE OF AUTHORITIES (cont'd)

<u>**Statues and Rules**</u>                                                                                            <u>**Page**</u>

153 Cong. Rec. S11841 (daily ed. Sept. 20, 2007)........................................................................13

153 Cong. Rec. S11938 (daily ed. Sept. 21, 2007)........................................................................13

Fed. R. Civ. P. 8(a) .............................................................................................................15, 16, 25

<u>**Miscellaneous**</u>

Food and Drug Administration Center for Drug Evaluation and Research
      Approved Drug Products with Therapeutic Equivalence Evaluations,
      28th Edition, Preface, p. 14.................................................................................................18

Plaintiffs, Spear Pharmaceuticals, Inc. and Spear Dermatology Products, Inc. (collectively, "Plaintiffs" or "Spear"), submit this brief in opposition to the motion filed by Defendant Valeant Pharmaceuticals International ("Valeant") to dismiss Spear's Supplemental Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## NATURE AND STAGE OF THE PROCEEDING

Plaintiffs filed their Complaint on December 17, 2007 and their Supplemental Complaint on April 18, 2008.[1] The Supplemental Complaint contains the following claims against Valeant: breach of contract based on the Evaluation Agreement (Count III); trade secret misappropriation (Count V); and unjust enrichment (Count VI).

On April 11, 2008, the United States Food and Drug Administration (the "FDA") granted final approval to Spear's Abbreviated New Drug Application ("ANDA") for its generic fluorouracil product. *See* Supplemental Complaint, ¶ 51; Supplemental Complaint, Ex. A. At the same time, the FDA denied the Citizen Petition that had been filed by Valeant (using the Spear confidential information improperly disclosed to Valeant by co-defendant William Blair & Company, L.L.C. ("Blair")). Supplemental Complaint, ¶ 52; Supplemental Complaint, Ex. B. In denying Valeant's Citizen Petition, the FDA rejected each of the substantive arguments advanced by Valeant. In light of the FDA's April 11, 2008 actions approving Spear's ANDA and denying Valeant's Citizen Petition, on April 16, 2008, Spear filed an unopposed motion for leave to supplement its Complaint pursuant to Fed. R. Civ. P. 15(d). On April 18, 2008, the Supplemental Complaint was filed.

On April 25, 2008, Valeant sued the FDA in the United States District Court for the Central District of California seeking an order directing the FDA to suspend approval of Spear's ANDA.

---

[1]    For the Court's convenience the Supplemental Complaint is attached to the Declaration of
Lisa Phillips ("Phillips Decl."), filed herewith, at Ex. A.

*Valeant Pharms. Int'l v. Leavitt*, No. 08-00449.  Spear intervened in that action.  After extensive briefing and oral argument, on June 18, 2008, in a 36-page decision, that Court denied Valeant's motion for a preliminary injunction, holding, *inter alia*, that Valeant had not established a likelihood of success on the merits, that the entry of a preliminary injunction would not be in the public interest, and that the harm to Valeant was outweighed by the harm to Spear.  The Court also held that: "Valeant's citizen petition delayed the approval of Spear's ANDA."  Phillips Decl., Ex. B, at p. 13, ¶ 57.

Defendant Valeant moved to dismiss the Supplemental Complaint on July 9, 2008.

## SUMMARY OF ARGUMENT

This case arises from Blair's violation of the obligations that it undertook as an investment banker representing Spear in the search for a potential purchaser of another of Spear's product lines (tretinoin) and Valeant's subsequent violation of its related obligations.  Specifically, the claims alleged against Valeant are based, *inter alia*, on Blair's improper disclosure of Spear's confidential information during that time to Valeant and Valeant's subsequent use (in violation of an express contractual prohibition) of the Spear confidential information for a purpose other than evaluation of the purchase opportunity - - *i.e.*, as the basis for Valeant's filing of a Citizen Petition designed to cause a delay in FDA approval of Spear's ANDA.

Valeant advances four arguments in support of its motion to dismiss.

The first argument, purportedly grounded in the Supreme Court's ruling in *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007) (hereinafter, "*Twombly*"), is that Spear's Supplemental Complaint is "nothing more than a swirl of innuendo and guesswork" and that it "contains little more than speculation, bald assertions, and legal conclusions."  Valeant Br. at 1; 6.  Nowhere in its brief does Valeant even cite the three published decisions by this Court since *Twombly* interpreting and

2

applying that ruling.[2]  In the *Intel* case, this Court held that *Twombly* did not change the fundamental purpose of a motion to dismiss, which is "to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case."  *In re Intel Corp.*, 496 F. Supp. 2d at 407 (citing *Kost v. Kozakiewicz*, 1 F. 3d 176, 183 (3d Cir. 1993)).  What *Twombly* did was impose a "flexible plausibility standard" against which the complaint should be judged in order to ascertain – accepting as true all allegations in the complaint and drawing all reasonable inferences in the light most favorable to the plaintiff – whether the factual allegations raise a right to relief "above the speculative level."  *In re Intel Corp.*, 496 F. Supp. 2d at 407-408.  The moving party bears the burden of demonstrating that dismissal is appropriate under Rule 12(b)(6).  *Homsey*, 497 F. Supp. 2d at 436; *Pfizer Inc.*, 525 F. Supp.2d at 685.

As demonstrated below in Section I, the Supplemental Complaint far surpasses these requirements.  The Supplemental Complaint contains detailed and specific factual allegations, including, *inter alia*, details about the agreements with Valeant and co-defendant Blair concerning use and disclosure of Spear's confidential information, the communication to Blair of confidential information about Spear's plan to submit an ANDA for a generic fluorouracil cream based on a clinical trial for actinic keratosis (AK) only, communications between Valeant and Blair concerning the sale of Spear's dermatological product lines, the undisclosed business relationship between Blair and Valeant, Blair's disclosure of Spear's confidential information to Valeant, and, within days of Spear's planned ANDA filing, Valeant's filing of a Citizen Petition urging the FDA to reject ANDAs for generic fluorouracil cream based on clinical trials for AK only.  It names the individual at Blair (Brian Scullion) who disclosed the confidential information to Valeant and the time period

---

[2]    *In re Intel Corp. Microprocessor Antitrust Litig.*, 496 F. Supp. 2d 404 (D. Del. 2007) (hereinafter "*In re Intel Corp.*"); *Homsey v. Vigilant Ins. Co.*, 496 F. Supp. 2d 433 (D. Del. 2007); *Pfizer Inc. v. Ranbaxy  Labs. Ltd.*, 525 F. Supp. 2d 680 (D. Del. 2007).

during which he leaked the information to Valeant (October 31, 2004 - December 21, 2004). The Supplemental Complaint also contains specific factual allegations demonstrating why it is not only plausible, but likely, that the actions taken by Valeant were based on Spear confidential information leaked to Valeant by Blair. These allegations include the fact that the arguments in the Citizen Petition were tailored precisely to criticize (and thus delay approval of) any ANDA that was based on the specific type of clinical trial conducted by Spear (that is, an AK only trial), and that in the 20 years since Efudex® went off patent, Valeant had never before filed a Citizen Petition with respect to that product. Although Valeant (and Blair) are, of course, free to take the position in discovery and at trial that the timing and content of the Valeant Citizen Petition were a mere "coincidence" and not based on improperly leaked information concerning Spear's plans for filing an ANDA and the nature of its clinical trials, that is a factual issue that cannot be resolved on this motion – a point made clear in this Court's post-*Twombly* rulings.

Under the interpretation of *Twombly* advocated by Valeant, no complaint for theft of trade secrets (or, for that matter, many other types of tort or contract claims) could ever survive a Rule 12(b)(6) motion unless the plaintiff -- prior to any discovery -- is already in possession of the "smoking gun." As discussed below, that is not what *Twombly* requires.

Although Valeant criticizes the Supplemental Complaint as being based on "a coincidence in timing," nowhere in its papers does Valeant *ever* deny that it used Spear confidential information which it obtained from Blair as both the basis and the impetus to file its Citizen Petition, even though Valeant has been accused of rather serious misuse of confidential information. It is strange that at the very same time that it argues that the allegations in the Supplemental Complaint do not meet the "plausibility" requirements of *Twombly*, it never denies in the face of those accusations that

it used the improperly used confidential information for purposes not encompassed by the Evaluation Agreement.

Valeant's second argument is that the FDA's delay in approving Spear's ANDA is the superseding cause of Spear's injury and that the filing of the Citizen Petition cannot therefore be the proximate cause of Spear's injury. As demonstrated below in Section II, this argument ignores both the relevant law and the pleaded facts. Specifically, under Delaware law, a superseding event breaks the chain of causation only when the resulting harm was "neither anticipated nor reasonably foreseeable by the original tortfeasor." *Delaware Elec. Co-Op v. Duphily*, 703 A.2d 1202, 1209 (Del. 1997). Here, the Supplemental Complaint not only alleges that the delay was reasonably foreseeable, but cites Congressional findings (which have given rise to legislation to curb the abusive filing of Citizen Petitions) that the Citizen Petition process has been used by pharmaceutical companies for the improper purpose of delaying FDA approval of generic products. Supplemental Complaint ¶ 44. That is, Congress has already determined that Citizen Petitions are routinely used for precisely the purpose alleged here by Spear.

Moreover, the fact that the FDA used its independent judgment in evaluating the Spear ANDA does not break the causal connection. There are a multitude of cases holding that a causal connection is not broken merely because the injuries were ultimately caused by the independent judgment of another. Specifically, at least three courts have held that delays in approval by the FDA do not constitute a superseding cause preventing a tortfeasor from being held liable for its improper behavior. This is particularly so here where the injury -- delayed approval -- is, statistically speaking, virtually an inevitable consequence of the filing of a Citizen Petition.

Further, in the lawsuit brought by Valeant in California seeking a preliminary injunction ordering the FDA to suspend approval of Spear's ANDA, *that Court found that Valeant's filing of*

*the Citizen Petition had in fact delayed approval of Spear's ANDA.* Thus, not only was it foreseeable that Valeant's actions would lead to a delay in the approval of Spear's ANDA, but another federal district court has already found that the filing of Valeant's Citizen Petition caused that precise result. Phillips Decl., Ex. B, p. 13, ¶ 57.

Third, Valeant argues that Spear does not have standing to bring this action because proper standing requires that Spear's injuries be "fairly traceable" to Valeant's actions – stating that, based on the FDA's failure to approve in a timely fashion, Valeant's actions are not the "but for" cause of the injuries alleged. For the same reasons set forth above, Valeant's actions were both the "but for" cause and a proximate cause of Spear's injuries because it was both reasonably foreseeable and intended that the filing of the Citizen Petition would cause a delay in the FDA's review of the Spear ANDA. Thus, as set forth below in Section III, Spear has standing to bring this action.

Valeant's fourth argument is that its activity in petitioning the FDA is shielded under the *Noerr-Pennington* doctrine. Valeant's argument ignores the flotilla of cases discussed in Section IV.B. below holding that one cannot shield otherwise tortious behavior from liability by, for example, including the improperly leaked trade secrets in a filing with the government. *See*, *e.g.*, *Cohen v. Cowles Media Co.*, 501 U.S. 663, 669-70 (1991) (First Amendment protection did not apply to newspapers that breached contract with informant to keep his identity as the source of information secret even though the information published (naming him as the source) was true. "[T]he truthful information sought to be published must have been lawfully acquired . . . [the First Amendment provides] no special immunity from the application of general laws."). Moreover, "to qualify for protection, the defendant must employ ethical and legitimate means when petitioning." *Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*, 192 F. Supp.2d 519, 535 (M.D. La 2001). Valeant included pilfered trade secrets in its Citizen Petition and filed the Citizen Petition

with the intent to delay approval of Spear's ANDA and the knowledge that such a filing would be virtually certain to cause just such a delay in approval. As a result, Spear's "injury occurs no matter how the government responds to the request for aid." *Mercatus Group LLC v. Lake Forest Hosp.*, 527 F. Supp. 2d 797, 808 (N.D. Ill. 2007) (internal quotations and citation omitted). The *Noerr-Pennington* doctrine does not immunize a petitioner such as Valeant, who, in the process of petitioning, has violated both contractual duties and a statute. *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 514, 92 S. Ct. 609, 30 L.Ed.2d 642 (1972) ("[i]t is well settled that First Amendment rights are not immunized from regulation when they are used as an integral part of conduct which violates a valid statute.") (citation omitted). As set forth below in Section IV.A., because, *inter alia*, Valeant breached its obligations under the Evaluation Agreement and violated the Uniform Trade Secrets Act when it used Spear's confidential information as the basis for its petition, Valeant's Citizen Petition filing is not protected by the *Noerr-Pennington* doctrine.

Under Valeant's approach, it could break into a competitor's research facility, steal the competitor's private formula, and make that formula public as long as it were then included in a Citizen Petition. This is not, and has never been, the law.

## STATEMENT OF FACTS[3]

### A.    The Efudex® Product and Spear's Development of Its Generic Efudex® fluorouracil Product

Efudex,® a cream containing the active ingredient fluorouracil, is and has been sold by Defendant Valeant. Supplemental Complaint ¶ 12. Efudex® is approved for the topical treatment of actinic keratosis ("AK") and is also useful in the treatment of superficial basal cell carcinoma ("sBCC") in certain circumstances. Supplemental Complaint ¶ 13. Over 98% of the prescriptions

written for Efudex® are dispensed to patients for use in the treatment of AK.  *Id*.  Although the patents on Efudex® expired more than 20 years ago, Valeant (and the predecessor owner from whom Valeant bought the product) has been selling the product without any generic competition since 1970.  Supplemental Complaint ¶ 13.  In 2004, Efudex® was Valeant's single largest revenue-producing product.  Supplemental Complaint ¶ 46.

Spear began developing its generic equivalent to the Efudex® product in about February 1999.  Supplemental Complaint ¶ 12.  Beginning in June of that year, Spear consulted directly with the FDA regarding the clinical studies required to support its ANDA for the product.  Supplemental Complaint ¶ 14.  Spear proposed a clinical trial addressing the treatment of AK to support bioequivalence for both Efudex® label indications and the FDA agreed that such a trial would prove bioequivalence to the brand product with respect to both AK and sBCC.  Supplemental Complaint ¶¶ 13-14.  Once it had received that guidance from the FDA, Spear planned, developed and implemented the clinical trial.  *Id*. at ¶ 14.  To date, Spear has invested more than $6 million on the development and testing of its generic Efudex® product.  Supplemental Complaint ¶ 15.

**B.    Spear's Engagement of Blair to Locate a Buyer for the Tretinoin Product Line**

As alleged in detail in the Supplemental Complaint, in 2004 Spear retained Defendant Blair to provide it with certain investment banking services in connection with the possible sale of another product line, tretinoin.  Supplemental Complaint ¶¶ 16-26.  On May 6, 2004, after initial general discussions, Spear and Blair executed a Confidentiality Agreement designed to permit the disclosure of confidential information to Blair and allow for proper evaluation of the opportunity.  Supplemental Complaint ¶¶ 18-19.  The Confidentiality Agreement required that Blair refrain from

---

[3]    In the context of a motion to dismiss, all of the facts alleged in the Supplemental Complaint are to be taken as true, and all reasonable inferences are to be drawn in favor of the Plaintiff.

disclosing any of Spear's confidential information without Spear's prior written consent, and that the confidential information would not be used for any purpose outside of the possible transaction. Supplemental Complaint ¶ 20.

Shortly thereafter, on or about August 2, 2004, Spear and Blair executed an Engagement Letter, which reaffirmed the obligations set forth in the Confidentiality Agreement, further defined the relationship between the parties, and detailed Blair's strategic plan for securing a party to the possible transaction. Supplemental Complaint ¶¶ 25-27. In the Engagement Letter, Blair agreed, *inter alia*, to inform Spear if it had a financial relationship with any of the parties contemplated as potential parties to the possible transaction. Supplemental Complaint ¶ 26.

### C.    Spear's Communication of Trade Secrets and Confidential Information to Blair

During the course of negotiations regarding the terms of Blair's engagement, and after the Confidential Agreement had been executed, Spear began to share trade secrets and confidential information with Blair, through one of Blair's Vice Presidents, Brian Scullion ("Scullion"). Supplemental Complaint ¶¶ 21-24; 38. On May 13, 2004, at their first face-to-face meeting, Spear informed Scullion that the generic Efudex® product was in Spear's product development pipeline. Supplemental Complaint ¶ 38. Just before and just after communication of this information, Spear told Scullion that Spear did not want any of the parties considering the opportunity to be told which products were in Spear's pipeline. Supplemental Complaint ¶¶ 21; 23-24. Scullion received and acknowledged the request. Supplemental Complaint ¶ 22.

At the time the Engagement Letter was executed, on July 28, 2004, Spear shared additional confidential information with Scullion regarding the product pipeline. Supplemental Complaint ¶ 38. On October 31, 2004, after Valeant had executed the September 23, 2004 Evaluation

---

*In re Intel Corp.*, 496 F.Supp. 2d. at 407.

Agreement, Spear sent Scullion an e-mail which reaffirmed that the Efudex® generic product was in development, that a single bioequivalency study had been completed, and that Spear expected to be filing the ANDA for that product in late November 2004. Supplemental Complaint ¶¶ 32; 38. In this very same e-mail, Spear again restated that Spear was providing the information solely for Scullion and he did not want Scullion to pass the information on to others. Supplemental Complaint ¶ 38. Spear also told Scullion that the Spear bioequivalency study was for AK. Supplemental Complaint ¶ 38. Thus, as of October 31, 2004, Scullion knew not only that Spear intended to file an ANDA for a generic version of Efudex®, but also when Spear anticipated making that filing, that Spear had conducted a single clinical trial, which related only to AK. Supplemental Complaint ¶ 38.

### D.    Defendants' Relationship and Valeant's Evaluation of the Proposed Transaction

By September 30, 2004, Blair owned $1.7 million in Valeant stock. Supplemental Complaint ¶ 30. Neither this important fact, nor the nature and extent of the business relationship between Blair and Valeant, was communicated to Spear prior to Blair's September 3, 2004 proposal of Valeant as a potential investor. *Id.* Without full information, Spear approved Valeant's evaluation of the opportunity and the disclosure of certain confidential information -- but not any information concerning Spear's pipeline (including  Efudex®) -- to Valeant pursuant to a confidentiality agreement. Supplemental Complaint ¶¶ 31-32.

Scullion executed an Evaluation Agreement with Valeant on September 23, 2004. Supplemental Complaint ¶ 32. The Evaluation Agreement required that Valeant hold all of Spear's confidential information secret and not use any of the information for a purpose other than evaluation of the tretinoin purchase transaction. Supplemental Complaint ¶¶ 32-33. Spear was a third party beneficiary of the Evaluation Agreement, as expressly set forth in that agreement. Supplemental Complaint ¶ 34.

After the initial proposal of Valeant as an "A-list party" for evaluation of the proposed transaction, Blair communicated several updates with respect to Valeant's evaluation status. Supplemental Complaint ¶¶ 30; 35-37. During this same time period, Scullion met with Valeant a number of times, and spoke with Valeant's upper level management. Supplemental Complaint ¶ 39. On October 11, 2004, Blair told Spear that Valeant had received the memorandum and was evaluating its interest in the opportunity. Supplemental Complaint ¶ 35. That same update set forth October 14, 2004 as the "Indication Due Date" for Valeant. *Id.* On October 15, 2004, Scullion informed Spear that Valeant was dropping out of the prospective purchaser group based on pricing. Supplemental Complaint ¶ 36. That decision was confirmed when Spear received an October 18, 2004 update which listed Valeant as declining the offer. Supplemental Complaint ¶ 37.

### E.    Valeant's Filing of its Citizen Petition

By October 31, 2004, Blair had acquired at least the following confidential information from Spear: (1) Spear was in the process of developing a generic equivalent to Efudex[®]; (2) Spear had completed a single bioequivalence study demonstrating equivalence to the Efudex[®] product in the treatment of AK; (3) that the study did not involve the treatment of sBCC; and (4) Spear expected that it would file its ANDA in late November 2004. Supplemental Complaint ¶ 38. Valeant was under an obligation to hold Spear's confidential information secret and to not use any of that information for any purpose other than evaluation of the proposed transaction. Supplemental Complaint ¶ 32.

On December 21, 2004, after being off-patent some 20 years, Valeant filed a Citizen Petition with respect to the Efudex[®] product requesting that the FDA "refrain from approving an [Abbreviated New Drug] application unless an application includes a sBCC study." Supplemental Complaint ¶¶ 41; 43. Because the Citizen Petition was so narrow and its request so specific, the

content of the Citizen Petition is evidence that Blair communicated Spear's confidential information to Valeant sometime after October 31, 2004 and before December 21, 2004, when the petition was filed. Supplemental Complaint ¶¶ 42-43. Such an inference is particularly appropriate since there is a wide variety of subjects on which Valeant could have filed a citizen petition. It could have, for example, filed a petition requesting: (1) that the FDA refrain from approving an ANDA unless that ANDA included an AK study guessing that an sBCC study would be done by a generic firm (since, for example, statistically sBCC has a higher cure rate with Efudex® than does AK); or (2) that the FDA refrain from approving an ANDA unless that ANDA included testing in both sBCC and AK. Valeant chose neither approach. Instead, its Citizen Petition provides strong circumstantial evidence that Valeant had learned that Spear's study had been performed only in AK and not in sBCC, and that Spear had filed an ANDA based on that study.[4] This inference is bolstered by the fact that prior to that filing, in the more than *twenty years* since the drug had been off patent, Valeant had never before filed a Citizen Petition with respect to its Efudex® product. Supplemental Complaint ¶ 42.

### F.    The Citizen Petition Process

Congress has recognized that the Citizen Petition process has been used by certain pharmaceutical companies for the improper purpose of delaying FDA approval of generic products, as demonstrated by the recent introduction, passage and enactment into law on September 27, 2007 of amendments to the Federal Food, Drug, and Cosmetic Act directing the FDA not to delay approval of ANDAs based on the filing of a Citizen Petition. *See* Food and Drug Administration Amendments Act of 2007 § 914(a), 21 U.S.C. § 355. Remedying past abuse of the Citizen Petition process was a primary motivation for passage of the legislation, as evidenced by the following

---

[4]    Although ultimately Spear did not file its ANDA until January 2005, Spear had told Blair in October 2004 that it intended to file its ANDA by late November. Supplemental Complaint ¶38. Whether, and when, an entity files an ANDA is non-public information.

comments from the legislative history of the Act and other related legislation before Congress at the time:

From legislative history of Food and Drug Administration Amendments Act of 2007:

> "Let us be clear: The citizen petition provision is designed to address attempts to derail generic drug approvals. Those attempts, when successful, hurt consumers and the public health." 153 Cong. Rec. S11841 (daily ed. Sept. 20, 2007) (statement of Sen. Kennedy).

> "The bill also takes action on the abuse of citizen petitions. . . This procedure should be used to protect public health - but too often, it is subverted by those who seek only to delay the entry onto the market of generic drugs. Even if the petitions are found to be meritless, they will have accomplished their mission - delaying access for consumers to safe and lower cost medicines." 153 Cong. Rec. S11938 (daily ed. Sept. 21, 2007) (statement of Sen. Kennedy).

From legislative history of the Citizen Petition Fairness and Accuracy Act of 2007 - introduced on January 4, 2007:

> "The legislation I introduce today. . . targets one particularly pernicious practice by brand name drug companies to impeded or block the marketing of generic drugs - abuse of the FDA citizen petition process." 153 Cong. Rec. S64 (daily ed. Jan. 4, 2007) (statement of Sen. Kohl).

> "While this citizen petition process was put in place for a laudable purpose, unfortunately in recent years it has been abused by frivolous petitions submitted by brand name drug manufacturers (or individuals acting on their behest) whose only purpose is to delay the introduction of generic competition." 153 Cong. Rec. S64 (daily ed. Jan. 4, 2007) (statement of Sen. Kohl).

> "Indeed, brand name drug manufacturers often wait to file citizen petitions until just before the FDA is about to grant the application to market the new generic drug solely for the purpose of delaying the introduction of the generic competitor for the maximum amount of time possible, This gaming of the system should not be tolerated." 153 Cong. Rec. S65 (daily ed. Jan. 4, 2007) (statement by Sen. Kohl).

> "Of the 21 citizen petitions for which the FDA has reached a decision since 2003, 20 -- or 95 percent of them -- have been found to be without merit. Of these, ten were identified as "eleventh hour petitions," defined as those filed less than 6 months prior to the estimated entry date of the generic drug. None of these ten "eleventh hour petitions" were found to have merit, but each caused unnecessary delays in the marketing of the generic drug by months or over a year. . . "153 Cong. Rec. S65 (daily ed. Jan. 4, 2007) (statement by Sen. Kohl).

13

### G.    Activity Since Valeant Filed its Citizen Petition

Just after filing its Citizen Petition, on December 29, 2004, Valeant submitted an offer to Blair for the purchase of the tretinoin product line that it had previously rejected more than two months earlier.  Supplemental Complaint ¶¶ 37; 45.  Blair then presented the offer to Spear. Supplemental Complaint ¶¶ 45-46.  This "offer" came just eight days after Valeant had filed its Citizen Petition.  Supplemental Complaint ¶ 45.

On January 3, 2005, Spear filed its ANDA seeking approval to manufacture and sell their generic Efudex® product.  Supplemental Complaint ¶ 40.  The FDA accepted the ANDA for filing on January 5, 2005.  *Id.*

Spear called the FDA to check on the status of its application in mid-April 2005. Supplemental Complaint ¶ 47.  During that call, the FDA informed Spear that Valeant had filed a Citizen Petition requesting that ANDAs submitted with bioequivalence studies addressing only the treatment of AK not be approved.  Supplemental Complaint ¶ 47.  The FDA told Spear that it was reviewing the Citizen Petition at that time.  *Id.*

In December 2006, Valeant began selling an authorized generic Efudex® product through a company called Oceanside.  Supplemental Complaint ¶ 50.  Until Spear began selling its product on April 11, 2008 – immediately following FDA approval of the Spear ANDA – this Valeant-sponsored authorized generic was the only generic Efudex® equivalent approved for marketing by the FDA.  *Id.*

On April 11, 2008, the FDA denied Valeant's Citizen Petition and granted final approval to the Spear ANDA.  *See* Supplemental Complaint, Exs. A and B.  Spear began selling the fluorouracil product that day.  In light of the FDA's actions, Spear filed an unopposed motion for leave to file a Supplemental Complaint on April 16, 2008.  The motion was granted and the Supplemental Complaint was filed on April 18, 2008.

On April 25, 2008, Valeant filed sued the FDA in the United States District Court for the Central District of California seeking an order directing the FDA to suspend approval of Spear's ANDA. Spear intervened in that action on April 28, 2008. After extensive briefing and oral argument, that Court denied Valeant's motion for a preliminary injunction on June 18, 2008.

## ARGUMENT

## I.     PLAINTIFFS' ALLEGATIONS MEET THE REQUIREMENTS OF FED. R. CIV. P. 8(a)

### A.     The Requirements of Fed. R. Civ. P. 8(a)

"Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 127 S. Ct. at 1964 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (internal quotations omitted). In the context of a claim made pursuant to Fed. R. Civ. P. 8(a)(2), courts "do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974; *Homsey*, 496 F. Supp. 2d at 435. This Court has characterized *Twombly* as imposing a "flexible plausibility standard" in pleadings analyzed for sufficiency under Fed. R. Civ. P. 8(a). *In re Intel Corp.*, 496 F. Supp.2d at 408 n.2 (citation omitted).

As the United States Court of Appeals for the Third Circuit has recognized, "an acceptable statement of the standard" for evaluation of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is "that courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and internal quotations omitted). Thus, "the pleading standard . . . 'does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a

reasonable expectation that discovery will reveal evidence of the necessary element." *Id*. at 234. That is, "[s]tandards of pleading are not the same as standards of proof." *Id*. at 246.

Here, contrary to Valeant's assertions, Spear pleads ample specific facts which support each of the claims alleged in the Supplemental Complaint. Judged against the very flexible standards of Fed. R. Civ. P. 8(a), the Supplemental Complaint is sufficient and Valeant's motion should be denied.

**B.    Each of the Arguments Offered by Valeant Ignores Substantial Portions of the Supplemental Complaint and Is Based on an Improper Application of Fed. R. Civ. P. 8(a)(2)**

Valeant argues that "Spear's reliance on a coincidence – coupled with a bare, unsupported assertion of misconduct" does not meet the pleading standards of Fed. R. Civ. P. 8(a). Valeant Br., p. 11. In making this argument, Valeant simply ignores the many allegations in the Supplemental Complaint that: provide the actual dates of communication of the specific confidential information from Spear to Blair; show there was ample means, opportunity and motive for Blair to communicate that information to Valeant; and provide a compelling basis for concluding that Blair conveyed that information to Valeant.[5] *See, e.g.*, Supplemental Complaint ¶ 38 (detailing communications from Spear to Blair's agent, Scullion, on May 13, 2004, July 28, 2004 and October 31, 2004);

---

[5]    It is unrealistic to expect that Spear, alleging that its confidential information was communicated to a third party, would know, without any discovery, the exact dates and locations of those communications. Nor is such pleading necessary -- even under Fed. R. Civ. P. 9(b) -- which dictates a heightened pleading standard. *See, e.g., In re Student Fin. Corp.*, No. 03-507, 2004 U.S. Dist. LEXIS 4952, at *8 (D. Del. Mar. 23, 2004) (Farnan, J.) ("courts cannot expect plaintiffs to have access to information sufficient to satisfy a detailed application of Rule 9(b) in all cases"); *Homsey*, 496 F. Supp. 2d at 439 (Farnan, J.). And, of course, the Supplemental Complaint does not allege a claim for fraud, and thus the heightened pleading requirements of Rule 9(b) do not apply here. The conflation of the pleading standards set forth in Rule 8(a) and Rule 9(b) which Valeant seems to support is one which *Twombly* specifically warned against. *Twombly*, 127 S. Ct. at 1974 ("[W]e *do not* require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.") (emphasis added).

Supplemental Complaint ¶ 32 (setting forth the date of the Evaluation Agreement); Supplemental Complaint ¶ 39 (setting forth details of Blair and Valeant's prior business relationship) ); Supplemental Complaint ¶ 42 (detailing the fact that Valeant's Citizen Petition was the sole citizen petition it has filed with respect to the Efudex® product, even though the product has been off patent for more than twenty years); Supplemental Complaint ¶ 43 (detailing the contents of Valeant's Citizen Petition and the reasonable inference that Valeant used improperly leaked Spear confidential information as its basis); Supplemental Complaint ¶ 45 (detailing Valeant's Offer Letter, leading to the reasonable inference that Blair had been communicating to Valeant at least between the September 23, 2004 effective date of the Evaluation Agreement and the December 29, 2004 presentation of the Offer Letter). Thus, the facts alleged in the Supplemental Complaint, under the correct Fed. R. Civ. P. 12(b)(6) standard, accepted as true, with reasonable inferences drawn in favor of Spear, more than support the plausibility of the allegation that Valeant used Spear's confidential information, improperly obtained from Blair, as the basis for its Citizen Petition. *Phillips*, 515 F.3d at 233.

Valeant argues that its Citizen Petition might have been directed against Taro Pharmaceutical Industries, which was marketing a generic version of Efudex® ***solution*** (Valeant Br., at pp. 8-9). There are two factual problems with that argument. *First*, Taro's ANDA for a generic version of Efudex® solution was approved on November 3, 2003. Valeant Br., Ex. A. Yet, Valeant did not file its Citizen Petition with respect to the Efudex® cream product until December 21, 2004 – more than a year later. Supplemental Complaint, ¶ 41. If Valeant had truly been concerned about Taro entering the market with a generic equivalent to its Efudex® cream product, it would have filed its Citizen Petition much earlier than it did.

*Second*, Exhibit A to Valeant's brief lists the therapeutic equivalency code for the Taro solution as an "AT" equivalent to the brand Efudex® solution. As set forth in the preface to the Orange Book, an "AT" rating for a topical product[6] means that the "solution. . . contain[s] the same active ingredient in the same topical dosage form for which *a waiver of in vivo bioequivalence has been granted and for which chemistry and manufacturing processes are adequate to demonstrate bioequivalence*, are considered therapeutically equivalent [and] are coded **AT**."[7]  The AT rating therefore indicates that Taro chose to demonstrate bioequivalence for its solution product *without* conducting any *in vivo* bioequivalence testing. A Citizen Petition directed against Taro rather than Spear would therefore likely have argued that the FDA should not approve an Efudex® cream product unless the ANDA applicant conducted *in vivo* testing rather than using the "AT" process that Taro had used to obtain approval of its Efudex® topical solution product.  But that is not the argument that Valeant made in its Citizen Petition.  This is strong evidence that Valeant's filing was not directed against Taro.

Further, even if Valeant's arguments regarding the Taro product were convincing, which they are not, the law does not require dismissal of a complaint if the defendant can demonstrate the possibility of an "alternative explanation" of the facts alleged.  Rather, the law is, if the facts alleged demonstrate that, "under *any* reasonable reading of the complaint, the plaintiff may be entitled to relief," the complaint meets the pleading requirements of Fed. R. Civ. P. 8(a).  *Phillips*, 515 F.3d at

---

[6]    Although Valeant states, with reference to Taro's generic Efudex® solution product, that "[a] solution is a liquid that is typically injected into the bloodstream" (Valeant Br., p. 9 n.3) as Valeant certainly knows, the Taro generic Efudex® solution product, like the cream product at issue here, is a topical product applied directly to the skin. Phillips Decl., Ex. C.

[7]    *See* Food and Drug Administration Center for Drug Evaluation and Research Approved Drug Products with  Therapeutic Equivalence Evaluations, 28th Edition, Preface, at p. 14, available at http://www.fda.gov/cder/ob/docs/preface/ecpreface.htm, accessed on September 2, 2008, Phillips Decl., Ex. D (emphasis added).

233 (emphasis added) (citation and internal quotations omitted).  Given a reasonable reading of all of the facts alleged in the Supplemental Complaint, Valeant's argument that its Citizen Petition may have been directed against Taro should be rejected.

Valeant's next argument is based on the timing of its citizen petition filing vis-à-vis Spear's actual ANDA filing date.  Valeant Br., p. 9.  Valeant asserts that "Spear fails to explain why Valeant filed its Citizen Petition **several weeks before Spear even filed its ANDA**."  *Id*. (emphasis in original).  Spear believes the explanation of that timing is plain from the allegations of the Supplemental Complaint.  Specifically, prior to October 31, 2004, Spear had communicated to Blair the fact that it expected to file its ANDA in November 2004.  Blair then provided Valeant with that projected ANDA filing date.  Supplemental Complaint, ¶¶ 38, 41.  Valeant filed its Citizen Petition a few weeks *after* it expected Spear would have filed its ANDA (based on the confidential information it had improperly received), intending that its filing would complicate and delay the review of Spear's ANDA.  Thus, the fact that the Citizen Petition was filed prior to the filing of Spear's ANDA further supports the reasonable inference that Valeant improperly obtained the expected ANDA filing date through Blair.

Valeant also argues that "Spear alleges no specific facts" to support the allegation that, in the absence of Valeant's Citizen Petition, Spear's "ANDA would have been approved long ago." Valeant Br., at p. 10.  Again, Valeant ignores several key allegations from the Supplemental Complaint (including those of the paragraph *directly* preceding the one paragraph it uses as the basis for its argument).  Specifically, prior to the start of its development of a generic equivalent to the Efudex® cream product, Spear extensively consulted "with the FDA to ensure that the clinical trial performed in support of the proposed ANDA was correctly designed . . . and the FDA agreed that [a

19

clinical trial in the treatment of AK] would prove bioequivalence to the brand product with respect to both treatment indications." Supplemental Complaint, ¶¶ 14, 48. Because the FDA had pre-reviewed Spear's clinical study design, the reasonable inference (as required, in Spear's favor) is that Valeant's Citizen Petition did delay the approval of Spear's ANDA. Supplemental Complaint, ¶ 49. Valeant's argument also ignores the fact that the United States District Court for the Central District of California, in rejecting Valeant's request that it order the FDA to suspend Spear's ANDA approval, specifically found that: "Valeant's citizen petition delayed the approval of Spear's ANDA." Phillips Decl., Ex. B, p. 13, ¶ 57

Moreover, because the Spear ANDA was the first ANDA with Efudex® cream as the reference listed drug, and "there [we]re no blocking patents or exclusivities," the Spear ANDA would have been expedited for review in the absence of Valeant's Citizen Petition and thus, would have likely been approved in less time than the average.[8]

When all factual allegations in the Supplemental Complaint are accepted as true and all reasonable inferences are drawn in favor of Spear, the Supplemental Complaint is more than sufficient to meet the "flexible plausibility standard" discussed in *Twombly* and accepted by this court in the *Intel* case. *Twombly*, 127 S. Ct. 1955; *In re Intel Corp.*, 496 F. Supp. 2d at 408 n.2.

## II. VALEANT'S USE OF SPEAR'S CONFIDENTIAL INFORMATION AS THE BASIS FOR FILING ITS CITIZEN PETITION WAS A DIRECT AND PROXIMATE CAUSE OF THE ALLEGED INJURY

Valeant also argues that the intervening actions of the FDA (*i.e.*, its delay in approving Spear's ANDA) are a superseding cause of Spear's injuries. Valeant Br. at 12-13. In making its argument, Valeant ignores both the applicable substantive law and the proper standards on a motion

---

[8]   Dep't of Health and Human Services, Office of Inspector General Report, "The Food and Drug Administration's Generic Drug Review Process," June 2008 (Phillips Decl., Ex. E), p.
3    n.13; p. 18.

to dismiss. As set forth below, applying Delaware causation standards to the facts here and judging the Supplemental Complaint against the standard applicable to a motion to dismiss requires denial of the motion.

### A.    The Applicable Causation Standards

"Delaware recognizes the traditional 'but for' definition of proximate causation." *Duphily v. Delaware Elec. Co-Op., Inc.*, 662 A.2d 821, 828 (Del. 1995) (citations omitted).[9] "A proximate cause is one that 'in natural and continuous sequence, *unbroken by any efficient intervening cause*, produces the injury and without which the result would not have occurred.'" *Delaware Elec. Co-Op. v. Duphily*, 703 A.2d 1202, 1209 (Del. 1997) (quoting *Culver v. Bennett*, 588 A.2d 1094, 1097 (Del. 1991)) (emphasis in original) (remaining citation omitted).

"The mere occurrence of an intervening cause, however, does not automatically break the chain of causation stemming from the original tortious conduct . . . there may be more than one proximate cause of an injury." *Duphily*, 662 A.2d at 829. "In order to break the causal chain, the intervening cause must also be a superseding cause." *Id*. The Delaware Supreme Court has held that an event is a superseding cause that breaks the chain of causation only when "the intervening act or event itself [was] <u>neither anticipated nor reasonably foreseeable by the original tortfeasor</u>." *Id*. (emphasis added) Moreover, if the intervening act of a third party "was reasonably foreseeable, the original tortfeasor is liable for his negligence because the causal connection between the original tortious act and the resulting injury remains unbroken." *Phifer v. E.I. du Pont de Nemours & Co.*, No. 03-0327, 2004 U.S. Dist. LEXIS 10727, at *4 (D. Del. June 7, 2004), *aff'd*, 2005 U.S. App. LEXIS 13489 (3d Cir. 2005) (quoting *Duphily*, 662 A.2d at 829)) (emphasis added). Finally, "[a]n

---

[9]    Delaware law is applicable to Counts III, V and VI.

event is foreseeable if a defendant should have recognized the risk of injury under the circumstances. It is irrelevant whether the particular circumstances were foreseeable." *Duphily*, 662 A.2d at 830 (citation omitted).

In this case, a delay in the approval of Spear's ANDA was both the reasonably foreseeable and intended result of Valeant's actions. Moreover, the United States District Court in the Central District of California, in a case brought by Valeant, has already held that Valeant's filing of its Citizen Petition in fact caused a delay in the approval of Spear's ANDA.

Under these legal principles, Valeant's argument therefore fails.

**B.    Spear's Injury was Proximately Caused by Valeant's Actions in Using Spear's Confidential Information as the Basis for its Citizen Petition**

Valeant argues that the actions of the FDA in not approving the Spear ANDA are an intervening and superseding cause relieving it from liability for its improper use of Spear's confidential information as a basis for its Citizen Petition which, as one district court has already found, delayed Spear's ANDA approval.

In order to qualify as a superseding cause, the delay in FDA approval of Spear's ANDA would have had to have been unforeseeable. *Phifer*, 2004 U.S. Dist. LEXIS 10727 at *4. *See also*, *Duphily*, 662 A.2d at 829. Here, however, not only was a delay in FDA approval a *foreseeable* consequence of Valeant's Citizen Petition, it was the *intended* consequence. The Supplemental Complaint alleges that Valeant's purpose in filing the Citizen Petition was to block the approval of Spear's ANDA. *See* Supplemental Complaint at ¶ 41-44. As discussed above at Section F., Congress has legislatively determined that the only purpose of many Citizen Petitions filed by brand name companies "is to delay the introduction of generic competition." *See* Supplemental Complaint at ¶ 44 quoting legislative history of the Citizen Petition Fairness and Accuracy Act of 2007. Indeed, so strong was the evidence of misuse of the Citizen Petition process to delay approval of

22

ANDAs, that Congress passed - and the President signed into law - legislation designed to remedy that problem.

The FDA is an agency with limited resources. The natural consequence of a citizen petition is, as Congress has found, to delay final approval of any ANDA affected by that petition. And although many citizen petitions are frivolous (as Congress determined) whether a citizen petition is frivolous or has some modicum of merit, both have the effect of delaying FDA approval.[10]

At least three courts, in ruling on *motions to dismiss*, have found that the FDA's activities (including the FDA's delay in approving applications before it) do not constitute a superseding cause. *See, e.g.*, *In re Wellbutrin SR/Zyban Antitrust Litig.*, 281 F. Supp. 2d 751 (E.D. Pa. 2003); *Dr. Reddy's Labs., Ltd. v. aaiPharma Inc.*, 66 U.S.P.Q.2d 1878 (S.D.N.Y. 2002); *Eli Lilly & Co. v. Am. Cyanamid Co.*, No. 95-536, 2001 U.S. Dist. LEXIS 212 (S.D. Ind. Jan. 1, 2001). Each of these cases is discussed below.

In a case with facts quite analogous to those here, a court in the Southern District of New York determined that the defendant's argument that the FDA's actions were the superseding cause of the plaintiff's injuries was "meritless." *Dr. Reddy's Labs., Ltd.*, 66 U.S.P.Q.2d at 1888. In that case, the plaintiff, DRL, and the defendant, aaiPharma, had a relationship pursuant to which DRL "would supply bulk products, including omeprazole, to aaiPharma so that aaiPharma could determine whether to file an ANDA for a finished dosage product, which would contain DRL's bulk

---

[10]     The passage of the recent Food and Drug Administration Amendments Act of 2007, codified at 21 U.S.C. § 355(q), imposed safeguards to ensure that such delay does not occur and that any filed Citizen Petition is not submitted for the primary purpose of delaying a potential competitor's ANDA approval. *See, e.g.*, 21 U.S.C. § 355(q)(1)(A) (requiring simultaneous review of any pending ANDA and filed Citizen Petition); 21 U.S.C. § 355(q)(1)(E) (permitting denial of a Citizen Petition at any point in review if it is determined that such was filed with the "primary purpose of delaying the approval of an application"); 21 U.S.C. § 355(q)(1)(F) (requiring *final* agency action on a Citizen Petition no later than 180 days after its submission). That legislation, however, was not retroactive.

product." *Id*. at 1882. Pursuant to that arrangement, aaiPharma agreed not to use DRL's confidential information "for purposes other than for the filing of an ANDA." *Id*. After receiving bulk omeprazole from DRL, aaiPharma tested the bulk product and then allegedly shared those results with AstraZeneca, the manufacturer of the reference listed drug. *Id*. AstraZeneca "used the data received from aaiPharma to attempt to delay DRL's launch of generic omeprazole by submitting the data to the FDA" in a Citizen Petition. *Id*. at 1883. In response to the Citizen Petition, "the FDA requested that DRL run tests costing hundreds of thousands of dollars, delaying DRL's approval and adversely impacting DRL's entitlement to Hatch-Waxman exclusivity." *Id*. (internal quotations omitted). In its motion to dismiss, aaiPharma argued, as Blair does here, that the FDA's decision, rather than its own allegedly improper disclosure of confidential information, was the proximate cause of DRL's injuries because, *inter alia*, it does not "control" the FDA. *Id*. at 1888. After stating the general requirements of Fed. R. Civ. P. 8(a), the Court held that DRL's allegation of AstraZeneca's use of "the data that aaiPharma misappropriated from DRL to attempt to delay DRL's launch of generic omeprazole" and the allegation that that action resulted in the FDA's requirement that DRL run additional testing, "sufficient[ly] plead DRL's alleged injury, notwithstanding the fact that aaiPharma does not have control over the FDA." *Dr. Reddy's Labs., Ltd.*, 66 U.S.P.Q.2d at 1888 (internal quotations omitted).

Here, it is much the same – just as was alleged in the *Dr. Reddy's* case, Blair, in breach of preexisting agreements, shared confidential information with the NDA-holder. Supplemental Complaint ¶ 41. Just as was alleged in *Dr. Reddy's,* Valeant used that improperly disclosed information as a basis for its Citizen Petition. Supplemental Complaint ¶ 42-43. Just as was alleged in *Dr. Reddy's*, Spear has been injured as a result of the improper disclosure of its confidential

information and the resulting delay in approval of its ANDA.  Supplemental Complaint ¶ 49-50.

These alleged facts are more than sufficient to withstand a motion to dismiss.  *Dr. Reddy's Labs.,*

*Ltd.,* 66 U.S.P.Q.2d at 1888.

In *Wellbutrin*, a court in the Eastern District of Pennsylvania applied a very similar analysis

with respect to the legal effect of actions by the FDA.  In that case, the defendant moved to dismiss

an antitrust claim arguing "that the superseding cause for [plaintiff's] failure to enter the market is

the company's inability to obtain FDA approval."  The Court rejected this argument, holding that:

> Defendants' ability to pose a plausible and legally permissible version of events that
> explains why generic manufacturers of Wellbutrin SR have not yet entered the
> market does not compel this Court to grant their motion.  Rather, because this is a
> motion to dismiss, the Court must draw all reasonable inferences in favor of
> Plaintiffs.

*In re Wellbutrin SR/Zyban Antitrust Litig.*, 281 F. Supp. 2d at 757.  The Court then held a reasonable

inference existed that the brand companies' filing of frivolous lawsuits "directed resources away

from FDA approval . . [and] that this reallocation of funds resulted in a delay of FDA approval."  *Id*.

at 757.  Thus, "the failure of [the generic] to obtain FDA approval, was itself caused by Defendants'

filing of the allegedly frivolous lawsuits," leading to the court's denial of the motion to dismiss.  *Id*.

The same logic requires denial of Valeant's motion.  If Valeant had not improperly utilized

Spear confidential information which it obtained from Blair as a basis for the filing of its Citizen

Petition, the FDA would have approved Spear's ANDA far earlier than it did.  Supplemental

Complaint ¶¶ 42, 49 (16.6 month average approval time for ANDAs; here Spear's ANDA was

pending for 39.1 months – a 22.5 month delay over the average - prior to approval).[11]  Indeed, the

United States District Court for the Central District of California, in rejecting Valeant's request that

---

[11]    Because the Spear ANDA was the first ANDA with Efudex® cream as the reference listed
drug, and "there [we]re no blocking patents or exclusivities," the Spear ANDA would have

it order the FDA to suspend Spear's ANDA approval, made a specific factual finding that: "Valeant's citizen petition delayed the approval of Spear's ANDA." Phillips Decl., Ex. B, p. 13, ¶ 57.

In *Eli Lilly & Co.*, 2001 U.S. Dist. LEXIS 212, at *14-15, the brand company argued "that any delay in [the generic's] entry into the generic cefaclor market was proximately caused by the slow FDA approval process, not by" its action. The court rejected this argument, denying the brand company's motion to dismiss. In that case, Lilly had entered into agreements, prior to the expiration of the patent at issue, with every bulk active ingredient and intermediate compound supplier except one for the production of cefaclor by representing that it did not have the manufacturing capacity to produce its own active to keep pace with demand. *Id.* at *4-6. Zenith, the generic company, began to search for a supplier of the bulk active product and was forced to utilize the sole company with which Lilly had not entered into an agreement. *Id.* at *7. Zenith alleged that, because that company was not FDA-approved to sell the bulk in the United States, Zenith's entry into the generic market was delayed by roughly five months. *Id.* at *7-8. Lilly responded by arguing that the FDA's failure to approve that supplier was the proximate cause of Zenith's injury. The court rejected this argument, holding that Zenith had sufficiently plead causation and should have the opportunity to prove the allegations. *Id.* at *16.

The cases Valeant cites to support its theory that the FDA's delay in approval of Spear's ANDA is the superseding cause of Spear's injuries are readily distinguishable.[12] In *Barr Labs., Inc.*

---

[12]  been expedited for review in the absence of Valeant's Citizen Petition and thus, would have likely been approved in less time than the average. Phillips Decl., Ex. E, p. 3 n.13; p. 18. In response to the cases Valeant cites in its footnote on p. 13, there are a wide range of cases in which the exercise of "independent judgment" by a third party has been held not to constitute a superseding cause. *See, e.g., Kerman v. City of New York*, 374 F.3d 93, 127 (2d Cir. 2004) (defendant's action in taking plaintiff to mental institution found to be the proximate cause of plaintiff's injuries even though the plaintiff was kept there as a result of

*v. Quantum Pharmics, Inc.*, 827 F. Supp. 111 (E.D.N.Y. 1993), the factual scenario was much different than that here. Barr's product was not the sole generic available at the time and, although Barr argued that the defendant Quantum's allegedly false ANDA filing led to its injuries, there were multiple layers of behavior which had to be assumed in order to demonstrate proximate causation. The FDA first had to approve the allegedly false ANDA, then all of the customers who had purchased defendant's product would have had to purchase Barr's product when there were other available generic choices. *Id.* at 116. The court's ruling was based more on the fact that it was "equally probable that Quantum's customers would have purchased a generic drug produced by one of Barr's competitors" than it was based on the FDA's actions.[13] *Id.* In *Dow Chem. Co. v. Exxon Corp.*, 30 F. Supp. 2d 673, (D. Del. 1998), although the PTO's activity in granting the patent was

---

[13] the physician's independent judgment. "[I]t is unquestionable here that [plaintiff's] detention in the hospital for some period of time was a foreseeable consequence of [defendant's] sending him there."); *Zahrey v. Coffey*, 221 F.3d 342, 352 (2d Cir. 2000) ("Even if the intervening decision-maker . . . is not mislead or coerced, it is not readily apparent why the chain of causation should be considered broken where the initial wrongdoer can reasonably foresee that his misconduct will contribute to an 'independent' decision that results in [plaintiff's harm]."); *Warner v. Orange County Dep't of Prob.*, 115 F.3d 1068, 1072-73 (2d Cir. 1996) (finding that because the independent official's activity was "neither abnormal nor unforeseen," that action did not qualify as a superseding cause.) (internal quotations and citation omitted); *Buenrostro v. Collazo*, 973 F.2d 39, 45 (1st Cir. 1992) ("Since a jury could conceivably find a causal nexus between the unlawful arrest and the consequent imprisonment, the particulars of the imprisonment issue will have to be litigated . . . the length and circumstances of [plaintiff's] detention are best examined at trial as part of the determination of damages flowing from the allegedly unlawful arrest.") (citation omitted). *See also*, *Egervary v. Young*, 366 F.3d 238, 250 (3d Cir. 2004), *cert. denied*, 543 U.S. 1049 (2005) (reconciling the cases by determining that, if the intervening official act is based on some problem or improper conduct with respect to the facts presented to the official, the official's subsequent act does not qualify as a superseding cause); *Hector v. Watt*, 235 F.3d 154, 161 (3d Cir. 2000) (recognizing that "proximate cause is hardly a rigorous analytic tool" and that "there is a great deal of tension in the caselaw about when official conduct counts as an intervening cause.").

[13] Additionally, the *Barr* case was brought under the RICO statute. "Proximate cause is interpreted narrowly in RICO claims." *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 483 (D. N.J. 1998) (citations omitted). Thus, it is not even certain that the proximate cause analysis of the *Barr* case is valid in a non-RICO action such as this case.

part of the causation chain, "Dow's customers and business affiliates [could] choose whether or not to pursue business opportunities with Dow and/or purchase or license Dow's. . . [t]echnology." *Dow Chem. Co.*, 30 F. Supp. 2d at 695-96. Here, Valeant's Citizen Petition, as another district court has held, delayed Spear's ANDA approval and led to the loss of a substantial amount of time on the market. Thus, no superseding cause broke the chain of causation between Valeant's breach and Spear's claimed injury.

"The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case." *In re Intel Corp.*, 496 F. Supp. 2d at 407 (Farnan, J.). The discussion above demonstrates that the issue of whether a subsequent event (such as the action of a government agency) is a superseding cause is *extremely* factually driven, further lending support to the conclusion that resolution of this issue on a motion to dismiss is improper.

## III.    THIS COURT HAS SUBJECT MATTER JURISDICTION OVER EACH OF THE CLAIMS ASSERTED AGAINST VALEANT

### A.    The Requirements of Fed. R. Civ. P. 12(b)(1)

"Federal Rule of Civil Procedure 12(b)(1) authorizes the Court to dismiss a complaint for lack of subject matter jurisdiction." *Hartford Fire Ins. Co. v. Interdigital Communs. Corp.*, 464 F. Supp. 2d 375, 377 (D. Del. 2006).[14] Rule 12(b)(1) challenges can either be facial (challenging "the complaint on its face"), or factual (attacking "the existence of subject matter jurisdiction in fact"). *Hurley v. Minner*, No. 05-826, 2006 U.S. Dist. LEXIS 69090, at *7 (D. Del. Sept. 26, 2006). Because Valeant "has not filed an answer to the complaint. . . the attack [on Spear's standing to bring suit against Valeant]. . . is necessarily considered a facial attack." *Hurley*, 2006 U.S. Dist. LEXIS 69090, at *7.

"In reviewing a facial challenge under Rule 12(b)(1), the standards relevant to Rule 12(b)(6) apply. . . the Court must accept all factual allegations in the complaint as true and all reasonable inferences must be drawn in favor of the plaintiff." *Hartford Fire Ins. Co.*, 464 F. Supp.2d at 377 (citation omitted). "[T]he party asserting subject matter jurisdiction has the burden of proving its existence." *Dow Chem. Co.*, 30 F. Supp. 2d at 689 (citation omitted). "Dismissal for a facial challenge is proper only when the claim clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or. . . is wholly insubstantial and frivolous." *Hurley*, 2006 U.S. Dist. LEXIS 69090, at *7 (internal quotations and citation omitted). This Court has subject matter jurisdiction over each of the claims Spear has brought against Valeant for the reasons set forth below.

### B.    <u>Spear Has Standing to Bring Each of its Claims Against Valeant</u>

#### 1.    **The Applicable Legal Standard**

"Standing has been defined by the United States Supreme Court as whether the litigant is entitled to have the court decide the merits of a dispute or of particular issues." *Hurley*, 2006 U.S. Dist. LEXIS 69090, at *9 (internal quotations and citation omitted). One of the requirements of the standing analysis is that the plaintiff's injury be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations and citation omitted). The causation-in-fact portion of the standing analysis is not the same as the requirement that an act be proximately caused by the defendant requiring the analysis of any intervening act or the foreseeability of the harm at the time of the defendant's act. *Pitt News v. Fisher*, 215 F.3d 354, 361

---

[14]    Although Valeant does not specifically assert Fed. R. Civ. P. 12(b)(1) in its opening brief, that rule is the basis for its allegation that Spear does not have standing to bring Counts III, IV and VI.

(3d Cir. 2000), *cert. denied*, 531 U.S. 1113 (2001) (citing *Murray v. Fairbanks Morse*, 610 F.2d 149, 160 (3d Cir. 1979)). That is, "in evaluating Article III's causation (or traceability) requirement, we are concerned with *something less than the concept of proximate cause*." *Focus on the Family v. Pinellas Suncoast Transit Auth.,* 344 F.3d 1263, 1273 (11th Cir. 2003) (internal quotations and citation omitted, emphasis added). Because "no authority even remotely suggests that proximate causation applies to the doctrine of standing. . . even harms that flow indirectly from the action in question can be said to be fairly traceable to that action for standing purposes." *Id.* (internal quotations and citation omitted). "*[F]or standing purposes* [Spear] is not required to prove causation beyond a reasonable doubt or by clear and convincing evidence." *Id.* (emphasis in original). As correctly framed by these legal standards, the claims against Valeant allege sufficient causation-in-fact between the injuries suffered by Spear and Valeant's multifaceted improper use of Spear's confidential information.

### 2. Under the Proper Standard, Spear Has Standing to Bring Each of its Claims Against Valeant

Just like the defendant in one of the cases it cites, Valeant "wrongly equates injury 'fairly traceable' to the defendant with injury as to which the defendant's actions are the very last step in the chain of causation." *Bennett v. Spear*, 520 U.S. 154, 168-69 (1997). Without Valeant's improper use of the Spear confidential information, there would have been no citizen petition, and, in turn, no delay with respect to the review of the Spear ANDA. Such "but for" causation supports a finding of causation-in-fact. *Pitt News*, 215 F.3d at 360-61 (citation omitted). *See also*, *Bennett*, 520 U.S. at 169 ("While, as we have said, it does not suffice if the injury complained of is the result of the independent action of some third party not before the court. . . that does not exclude injury produced by determinative or coercive effect upon the action of someone else.") (internal quotation and citation omitted).

Here again, the cases on which Valeant relies are distinguishable on their facts and not applicable to this case. With the exception of the *Bennett* case, cited *infra*, which actually supports *Spear's* position, the cases cited by Valeant are wholly inapplicable. *See Lujan*, 504 U.S. at 562 ("When . . . as in this case, a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else . . . standing is not precluded, but it is ordinarily substantially more difficult to establish.") (internal quotations and citations omitted); *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 321 (5th Cir. 2002) ("To find causation, we would have to infer the absurd – for example, that an extra warning, *though inapplicable to [Plaintiff]*, might have scared her and her doctor from [the medication at issue]. Such reasoning is too speculative to establish Article III standing.") (emphasis added); *Duquesne Light Co. v. U.S. EPA*, 166 F.3d 609, 613 (3d Cir. 1999) (The EPA, the sole original defendant in the action, was under a "statutory directive [to] approve [the State's] plan when it conforms to the federal minimum," making the plaintiff's injury not fairly traceable to the defendant's action.).[15]

Each of the cases relied upon by Valeant is far afield from the facts here. Spear is seeking redress for its own injury based on Valeant's improper use of the Spear confidential information and Valeant's improper use of Spear's confidential information is, at least, a "but for" cause of Spear's injury here. Thus, Spear has standing to bring Counts III, V and VI against Valeant.

## IV.    VALEANT'S PRE-PETITIONING WRONGDOING RENDERS THE PROTECTIONS OF THE NOERR-PENNINGTON DOCTRINE UNAVAILABLE

---

[15]    Valeant also cites *Eli Lilly & Co.*, 23 F. Supp. 2d 460 in support of its standing argument. In that case, Lilly's argument that it was injured as a result of a generic company's misrepresentations to the FDA which resulted in approval of the generic's application was rejected by the Court because "numerous other events had to occur before defendants' acts caused Lilly to lose sales." *Eli Lilly & Co.*, 23 F. Supp. 2d at 485 (*e.g.*, several generics existed at the time and pharmacies' stocking and physicians' prescribing decisions were additional intervening causes).

Under the *Noerr-Pennington* doctrine, conduct aimed at persuading the Government of a position or expressing views concerning government decisions is considered classic petitioning activity protected by the First Amendment.  The *Noerr-Pennington* doctrine, however, does not immunize a party that, in the process of petitioning, has violated contractual duties or a valid statute.  Spear has alleged that, in preparing and filing its Citizen Petition, Valeant used Spear's improperly-obtained confidential information in breach of the obligations owed Spear under the Evaluation Agreement and in violation of Delaware's Trade Secret Act.

**A.    The Noerr-Pennington Doctrine Does not Bar Spear's Claims**

"[C]onduct aimed at persuading the government of a position or expressing views and wishes concerning government decisions is classic petitioning activity protected by the First Amendment." *Louisiana Wholesale Drug Co. v. Sanofi-Aventis*, No. 07-7343, 2008 U.S. Dist. LEXIS 3611, at *10 (S.D.N.Y. Jan. 18, 2008) (citations omitted).  However, "[a] common thread running through the *corpus juris* of the Noerr-Pennington doctrine is that, to qualify for protection, the defendant must employ ethical and legitimate means when petitioning." *Livingston Downs Racing, Ass'n., Inc. v. Jefferson Downs Corp.*, 192 F. Supp. 2d 519, 535 (M.D. La. 2001) (citing *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508 (1972); *Allied Tube & Conduit Corp v. Indian Head*, 486 U.S. 492 (1988)) (remaining citation omitted).  The improper use of a competitor's confidential information is neither ethical nor legitimate.

In addition, "[i]t is well settled that First Amendment rights are not immunized from regulation when they are used as an integral part of conduct which violates a valid statute." *California Motor Transp. Co.*, 404 U.S. at 514 (citation omitted).  As set forth below, Valeant's activities in, *inter alia*, breaching its obligations under the Evaluation Agreement and violating the

Uniform Trade Secrets Act, remove its petitioning activity from the protections of the First Amendment and the *Noerr-Pennington* doctrine.

Moreover, because Valeant filed its Citizen Petition knowing that, as a statistical matter, the mere filing of the Citizen Petition was virtually guaranteed to delay approval of Spear's ANDA, and because the filing of the Citizen Petition did in fact delay the approval of Spear's ANDA (as one Court has already held), Spear's "injury flows directly from the petitioning [that is,] the injury occurs no matter how the government responds to the request for aid." *Mercatus Group LLC v. Lake Forest Hosp.*, 528 F. Supp. 2d at 808 (internal quotations and citation omitted). *See also*, *City of Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S. 365, 381 (1991) (Activity can be rendered a sham if delaying the competitor's entry to the market is achieved by use of the process itself rather than the result sought through the process.).

**B.    The First Amendment Does Not Provide a Shield Protecting Valeant from the**

**Consequences of Improperly Using Spear's Confidential Information**

Numerous courts have held that the protections of the First Amendment and the *Noerr-Pennington* doctrine do not apply to activity which involves "something more" – whether that something more occurred prior to, during, or after the generally-protected First Amendment activity. *See*, *e.g.*, *Cohen v. Cowles Media Co.*, 501 U.S. 663, 669-70 (1991) (First Amendment protection did not apply to newspapers who breached contract with informant to keep his identity as the source of information secret even though the information published (naming him as the source) was true. "[T]he truthful information sought to be published must have been lawfully acquired . . . [the First Amendment provides] no special immunity from the application of general laws."); *Snepp v. United States*, 444 U.S. 507 (1980) (CIA agent who had executed a confidentiality agreement was not permitted to freely publish unclassified material without prior approval); *McDonald v. Smith*, 472 U.S. 479, 485 (1985) (because letters petitioning the government included, *inter alia*, defamatory statements, such petitioning was not protected.  "The right to petition is guaranteed; the right to commit libel with impunity is not."); *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157, 1171 (9th Cir. 1977) (conduct which constitutes copyright infringement is not protected by the First Amendment); *Black & Decker Inc. v. Pro-Tech Power Inc.*, No. 97-1123, 1997 U.S. Dist. LEXIS 23999 (E.D. Va. Dec. 23, 1997) (Lanham Act counterclaim not blocked by Noerr-Pennington when plaintiff made false statements about defendant's products to defendant's customers separate from the bringing of the lawsuit); *LeBlanc-Sternberg v. Fletcher*, 781 F. Supp. 261 (S.D.N.Y. 1991) (Petitioning activity meant to facilitate the exclusion of Orthodox Jews from residence in the area not protected); *Tizes v. Curcio*, No. 94-7657, 1995 U.S. Dist. LEXIS 11368 (N.D. Ill. Aug. 9, 1995) (Petitioning protection not available to defendants who had attempted to

34

influence government activity to establish zoning and related ordinances with the primary purpose of harassing and/or discriminating against the plaintiffs); *Chevalier v. Animal Rehab. Ctr.*, 839 F. Supp. 1224, 1236 (N.D. Tex. 1993) (Activity not protected because defamation occurred both "during th[e] petitioning and in publications inducing the petitioning.").

With respect to the allegations against Valeant, there are several directly applicable cases. As to Count III, for breach of the Evaluation Agreement, when a contractual duty has been breached which is linked to the allegedly protected activity, the otherwise applicable protection is lost. *See*, *e.g.*, *Cohen*, 501 U.S. at 671 (protections were lost because "respondents obtained Cohen's name only by making a promise that they did not honor"); *Cherne Indus., Inc. v. Grounds & Assocs., Inc.*, 278 N.W.2d 81, 94 (Minn. 1979) (Because "Defendants had both contractual and common law duties not to disclose this information and not to use it to harm plaintiff's business," the protections of the First Amendment did not apply). As to Count V, for trade secret misappropriation, the "[u]se of trade secrets in violation of a confidentiality agreement or in breach of a fiduciary duty is not protected by the First Amendment." *Ford Motor Co. v. Lane*, 67 F. Supp. 2d 745, 750 n.6 (E.D. Mich. 1999) (citation omitted). Finally, as to Count VI, for unjust enrichment, activity other than the filing of the citizen petition is alleged, that is, using Spear's confidential information as a basis for determining strategy with respect to procuring an arrangement for the sale of an authorized generic. Supplemental Complaint, ¶ 87; *In re IBP Confidential Bus. Documents Litig.*, 755 F.2d 1300, 1318 (8th Cir. 1985) (judgment on claim alleging activity independent of the petitioning activity and associated defamation affirmed). In short, "the First Amendment does not confer . . . a constitutional right to disregard promises that would otherwise be enforced under state law." *Cohen*, 501 U.S. at 672. Thus, Valeant's superficial claim that its activity is protected under the First Amendment and the *Noerr-Pennington* doctrine must fail.

**V.     UNDER THIRD CIRCUIT PRECEDENT, EVEN IF THE SUPPLEMENTAL COMPLAINT WERE SUBJECT TO DISMISSAL, THIS COURT SHOULD PERMIT SPEAR TO AMEND THE SUPPLEMENTAL COMPLAINT**

In the event that this Court were to find that the Supplemental Complaint does not satisfy the liberal pleading standards of Rule 8, the Third Circuit has "instructed that . . . a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 236 (citations omitted). The opportunity to amend must be provided "even if the plaintiff does not seek leave to amend." *Id.* at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). Here, Spear requests that if the Court finds the Supplemental Complaint to be in any way deficient, that it be permitted leave to amend to cure any such deficiency.

<u>**CONCLUSION**</u>

For the foregoing reasons, Valeant's motion to dismiss should be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

_____
Jack B. Blumenfeld (#1014)
Rodger D. Smith, II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
rsmith@mnat.com

*Of Counsel:*

Steven Lieberman
Jason M. Shapiro
Lisa N. Phillips
ROTHWELL, FIGG, ERNST
   & MANBECK, P.C.
1425 K Street, N.W.
Suite 800
Washington, DC  20005
(202) 783-6040

September 2, 2008
2470510

*Counsel for Plaintiffs Spear Pharmaceuticals, Inc. and Spear Dermatology Products, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2008 I electronically filed the foregoing

with the Clerk of the Court using CM/ECF, which will send notification of such filing to:.

> Richard L. Horwitz, Esquire
> David E. Moore, Esquire
> POTTER ANDERSON & CORROON LLP

> Gregory V. Varallo, Esquire
> Steven J. Fineman, Esquire
> RICHARDS, LAYTON & FINGER, P.A.

I further certify that I caused to be served copies of the foregoing document on

September 2, 2008 upon the following in the manner indicated:

Richard L. Horwitz, Esquire                                    *VIA ELECTRONIC MAIL*
David E. Moore, Esquire                                          *and HAND DELIVERY*
POTTER ANDERSON & CORROON LLP
Hercules Plaza – 6th Floor
1313 North Market Street
Wilmington, DE  19801

Richard de Bodo, Esquire                                       *VIA ELECTRONIC MAIL*
Siegmund Gutman, Esquire
David G. Chang, Esquire
HOGAN & HARTSON L.L.P.
1999 Avenue of the Stars – Suite 1400
Los Angeles, CA  90067

Michael L. Kidney, Esquire                                     *VIA ELECTRONIC MAIL*
HOGAN & HARTSON L.L.P.
555 Thirteenth Street, N.W.
Washington, DC  20004-1109

Gregory V. Varallo, Esquire                                    *VIA ELECTRONIC MAIL*
Steven J. Fineman, Esquire                                       *and HAND DELIVERY*
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 King Street
Wilmington, DE  19801

1

Walter C. Carlson, Esquire                                    *VIA ELECTRONIC MAIL*
Hille R. Sheppard, Esquire
Kevin C. Pecoraro, Esquire
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL  60603

*/s/ Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)

2