**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

---

|  |  |  |
|---|---|---|
| SPEAR PHARMACEUTICALS, INC., and SPEAR DERMATOLOGY PRODUCTS, INC., | ) ) ) ) | |
|  | ) | Civil Action No. 07-821-JJF |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| WILLIAM BLAIR & COMPANY, L.L.C., and VALEANT PHARMACEUTICALS INTERNATIONAL, | ) ) ) ) | |
| Defendants. | ) | |

---

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO THE MOTION TO DISMISS**
**OF DEFENDANT WILLIAM BLAIR & COMPANY, L.L.C.**

Jack B. Blumenfeld (#1014)
Rodger D. Smith, II (#3778)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
rsmith@mnat.com

*Of Counsel:*

Steven Lieberman
Jason M. Shapiro
Lisa N. Phillips
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
1425 K Street, N.W.
Suite 800
Washington, DC  20005
(202) 783-6040

*Counsel for Plaintiffs Spear*
*Pharmaceuticals, Inc. and Spear*
*Dermatology Products, Inc.*

September 2, 2008

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

NATURE AND STAGE OF THE PROCEEDING ...................................................... 1

SUMMARY OF ARGUMENT ............................................................................... 3

STATEMENT OF FACTS .................................................................................... 7

      A.      The Efudex® Product and Spear's Development of Its Generic
              Efudex® fluorouracil Product .................................................................. 7

      B.      Spear's Engagement of Blair to Locate a Buyer for the
              Tretinoin Product Line .......................................................................... 8

      C.      Spear's Communication of Trade Secrets and Confidential
              Information to Blair .............................................................................. 8

      D.      Defendants' Relationship and Valeant's Evaluation of the Proposed
              Transaction ......................................................................................... 9

      E.      Valeant's Filing of its Citizen Petition ................................................. 10

      F.      The Citizen Petition Process ................................................................ 12

      G.      Activity Since Valeant Filed its Citizen Petition ................................... 13

ARGUMENT .................................................................................................. 14

I.      PLAINTIFFS' ALLEGATIONS MEET THE REQUIREMENTS OF
      FED. R. CIV. P. 8(a) ..................................................................................... 14

      A.      The Requirements of Fed. R. Civ. P. 8(a) ............................................. 14

      B.      Each of the Arguments Offered by Blair Ignores Substantial Portions
              of the Supplemental Complaint and Is Based on an Improper
              Application of Fed. R. Civ. P. 8(a)(2) .................................................... 15

II.     BLAIR'S IMPROPER COMMUNICATION OF SPEAR'S CONFIDENTIAL
     INFORMATION WAS A DIRECT AND PROXIMATE CAUSE OF
     THE ALLEGED INJURY ............................................................................. 21

## <u>TABLE OF CONTENTS (cont'd)</u>

<u>Page</u>

A.    The Applicable Causation Standards ....................................................21

B.    Spear's Injury was Proximately Caused by Blair's Actions
in Communication the Confidential Information to Valeant ................................22

III.    UNDER THIRD CIRCUIT PRECEDENT, EVEN IF THE SUPPLEMENTAL
COMPLAINT WERE SUBJECT TO DISMISSAL, THIS COURT SHOULD
PERMIT SPEAR TO AMEND THE SUPPLEMENTAL COMPLAINT ........................30

CONCLUSION......................................................................................................31

## TABLE OF AUTHORITIES

**Cases**                                                                                            **Page**

*Alston v. Parker*, 363 F.3d 229 (3d Cir. 2004) ............................................................31

*Barr Labs., Inc. v. Quantum Pharmics, Inc.*, 827 F. Supp. 111 (E.D.N.Y. 1993)........................29

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ............................................... *passim*

*Buenrostro v. Collazo*, 973 F.2d 39 (1st Cir. 1992)........................................................24

*City of Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S. 365 (1991) .........................................25

*Conley v. Gibson*, 355 U.S. 41 (1957) ...................................................................14

*Culver v. Bennett*, 588 A.2d 1094 (Del. 1991) ............................................................21

*Delaware Elec. Co-Op v. Duphily*, 703 A.2d 1202 (Del. 1997)..........................................6, 21

*Dow Chem. Co. v. Exxon Corp.*, 30 F. Supp. 2d 673 (D. Del. 1998) ...........................................29

*Dr. Reddy's Labs., Ltd. v. aaiPharma Inc.*, 66 U.S.P.Q.2d 1878 (S.D.N.Y. 2002) .......... 25, 26-27

*Duphily v. Delaware Elec. Co-Op., Inc.*, 662 A.2d 821 (Del. 1995)................................21, 22, 23

*Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.*, 637 F.2d 105 (3d Cir. 1980) ...........................20

*Egervary v. Young*, 336 F.3d 238 (3d Cir. 2004), *cert. denied*, 543 U.S. 1049 (2005)................25

*Eli Lilly & Co. v. Am. Cyanamid Co.*, No. 95-536, 2001 U.S. Dist. LEXIS 212
    (S.D. Ind. Jan. 1, 2001) ........................................................................25, 28

*Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460 (D. N.J. 1998).....................................29, 30

*Farrell v. Planters Lifesavers Co.*, 206 F.3d 271 (3d Cir. 2000)..........................................17, 20

*Hector v. Watt*, 235 F.3d 154 (3d Cir. 2000) ............................................................25

*Homsey v. Vigilant Ins. Co.*, 496 F. Supp. 2d 433 (D. Del. 2007)....................................... *passim*

*In re Intel Corp. Microprocessor Antitrust Litig.*, 496 F. Supp. 2d 404 (D. Del. 2007) ....... *passim*

*In re Student Fin. Corp.*, No. 03-507, 2004 U.S. Dist. LEXIS 4952
    (D. Del. Mar. 23, 2004).........................................................................16

## TABLE OF AUTHORITIES (cont'd)

**Cases**                                                                       **Page**

*In re Wellbutrin SR/Zyban Antitrust Litig.*, 281 F. Supp. 2d 751 (E.D. Pa. 2003) ............ 25, 27-28

*Kerman v. City of New York*, 374 F.3d 93 (2d Cir. 2004) ............................................24

*Kost v. Kozakiewicz*, 1 F.3d 176 (3d Cir. 1993) .....................................................3

*Livingston Downs Racing Ass'n Inc. v. Jefferson Downs Corp.*,
    192 F. Supp. 2d 519 (M.D. La. 2001)...............................................................25

*Mayer v. Development Corp. of Am.*, 396 F. Supp. 917 (D. Del. 1975)......................................2-3

*Pfizer v. Ranbaxy Labs. Ltd.*, 525 F. Supp. 2d 680 (D. Del. 2007) ......................................3, 4

*Phifer v. E.I. du Pont de Nemours & Co.*, No. 03-0327, 2004 U.S. Dist. LEXIS 10727
    (D. Del. June 7, 2004), *aff'd*, 2005 U.S. App. LEXIS 13489 (3d Cir. 2005) ..............22, 23

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)................................. *passim*

*TIG Ins., Co. v. Giffin, Winning, Cohen & Bodewes, P.C.*,
    No. 00-2737, 2002 U.S. Dist. LEXIS 24469 (N.D. Ill. Dec. 10, 2002)...........................21

*Valeant Pharms. Int'l v. Leavitt*, No. 08-00449 (C.D. Cal.) ............................................2

*Warner v. Orange County Dep't of Prob.*, 115 F.3d 1068 (2d Cir. 1996)....................................24

*Zahrey v. Coffey*, 221 F.3d 342 (2d Cir. 2000) ......................................................24

**Statutes and Rules**

21 U.S.C. § 355..............................................................................................12

21 U.S.C. § 355(q)(1)(A)...................................................................................24

21 U.S.C. § 355(q)(1)(E)...................................................................................24

21 U.S.C. § 355(q)(1)(F)...................................................................................24

Food and Drug Administration Amendments Act of 2007 § 914(a) ............................................12

153 Cong. Rec. S64 (daily ed. Jan. 4, 2007).........................................................12, 13

## <u>TABLE OF AUTHORITIES (cont'd)</u>

**<u>Statutes and Rules</u>**                                                                 **<u>Page</u>**

153 Cong. Rec. S65 (daily ed. Jan. 4, 2007)..................................................................13

153 Cong. Rec. S11841 (daily ed. Sept. 20, 2007)........................................................12

153 Cong. Rec. S11938 (daily ed. Sept. 21, 2007)........................................................12

Fed. R. Civ. P. 8(a) .........................................................................................................15

Fed. R. Civ. P. 8(a)(2).....................................................................................................15


**<u>Miscellaneous</u>**

Food and Drug Administration Center for Drug Evaluation and Research
      Approved Drug Products with Therapeutic Equivalence Evaluations,
      28th Edition, Preface, p. 14..............................................................................18

Plaintiffs, Spear Pharmaceuticals, Inc. and Spear Dermatology Products, Inc. (collectively, "Plaintiffs" or "Spear"), submit this brief in opposition to the motion filed by Defendant William Blair & Company, L.L.C. ("Blair") to dismiss Spear's Supplemental Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## NATURE AND STAGE OF THE PROCEEDING

Plaintiffs filed their Complaint on December 17, 2007 and their Supplemental Complaint on April 18, 2008.[1]  The Supplemental Complaint contains the following claims against Blair: breach of contract based on both the May 6, 2004 Confidentiality Agreement (Count I) and the August 2, 2004 Engagement Letter (Count II); breach of the implied covenant of good faith and fair dealing (Count IV), trade secret misappropriation (Count V), and negligence (Count VII).

On April 11, 2008, the United States Food and Drug Administration (the "FDA") granted final approval to Spear's Abbreviated New Drug Application ("ANDA") for its generic fluorouracil product.  *See* Supplemental Complaint, ¶ 51; Exhibit A.  At the same time, the FDA denied the Citizen Petition that had been filed by Valeant Pharmaceuticals International ("Valeant") (using the Spear confidential information improperly disclosed to Valeant by Blair). Supplemental Complaint, ¶ 52; Exhibit B.  In denying Valeant's Citizen Petition, the FDA rejected each of the substantive arguments advanced by Valeant.  In light of the FDA's April 11, 2008 actions approving Spear's ANDA and denying Valeant's Citizen Petition, on April 16, 2008, Spear filed an unopposed motion for leave to supplement its Complaint pursuant to Fed. R. Civ. P. 15(d).  On April 18, 2008, the Supplemental Complaint was filed.

On April 25, 2008, Valeant filed sued the FDA in the United States District Court for the Central District of California seeking an order directing the FDA to suspend approval of Spear's

---

[1]     For the Court's convenience, the Supplemental Complaint is attached to the Declaration of Lisa Phillips ("Phillips Decl."), filed herewith, at Ex. A.

ANDA.  *Valeant Pharms. Int'l v. Leavitt*, No. 08-00449.  Spear intervened in that action.  After extensive briefing and oral argument, on June 18, 2008, in a 36-page decision, that Court denied Valeant's motion for a preliminary injunction, holding, *inter alia*, that Valeant had not established a likelihood of success on the merits, that the entry of a preliminary injunction would not be in the public interest, and that the harm to Valeant was outweighed by the harm to Spear.  The Court also held that:  "Valeant's citizen petition delayed the approval of Spear's ANDA."  Phillips Decl., Ex. B, p. 13, ¶ 57.

Defendant Blair filed its motion to dismiss the Supplemental Complaint in this action on July 9, 2008.  Although Blair's motion requests dismissal of "the Supplemental Complaint," its supporting brief does not address the Supplemental Complaint on a count by count basis, nor does it address any of the breaches alleged in the Supplemental Complaint other than the breach of Blair's duty of confidentiality.  Thus, the counts that are based, at least in part, on Blair's additional breaches (Counts II, IV and VII) are not encompassed by Blair's motion to dismiss.[2]

---

[2]    In addition to Blair's breach of its confidentiality obligations to Spear, which Blair addresses (we submit unsuccessfully) in its moving brief, the Supplemental Complaint alleges several additional breaches that Blair fails even to mention.  For example, the Supplemental Complaint alleges that Blair breached its obligations by not disclosing its preexisting financial relationship with Valeant before it presented Valeant to Spear as a potential party to the possible transaction.  Supplemental Complaint ¶¶ 30, 62-63.  In addition, the Supplemental Complaint alleges that Blair breached its obligation to Spear by delivering Valeant's Offer Letter to Spear knowing that it was made in bad faith -- that is, Valeant was making the offer as a pretext by which it could seek to gather more information from Spear.  Supplemental Complaint ¶ 46.  These additional breaches, *independent of the breach by disclosure of Spear's confidential information*, are alleged in, and form a basis for Counts II, IV and VII.  In its brief, Blair states that it "will not present the Court with unnecessary count-specific arguments in this motion" because the "deficiencies" it does discuss are "so fundamental."  Blair Br. at 3 n.2.  Because at least three of the claims alleged in the Supplemental Complaint are not based solely on what Blair characterizes as the "deficiencies" it does address, Blair has left Counts II, IV and VII at least partially unaddressed and thus not subject to dismissal.  *See, e.g.*, *Mayer v. Development Corp. of Am.*, 396 F. Supp. 917, 928 (D. Del. 1975) (holding that because the defendants' motion to dismiss had properly eliminated only one aspect of the

## SUMMARY OF ARGUMENT

This case arises from Blair's violation of the obligations that it undertook as an investment banker representing Spear in the search for a potential purchaser of another of Spear's product lines (tretinoin).  The claims alleged against Blair are based, *inter alia*, on Blair's improper disclosure of Spear's confidential information during that time to co-defendant Valeant and Valeant's subsequent use (in violation of an express contractual provision) of the Spear confidential information for a purpose other than evaluation of the purchase opportunity - - *i.e.*, as a basis for Valeant's filing of a Citizen Petition designed to cause delay in FDA approval of Spear's ANDA.

Blair advances two arguments in support of its motion to dismiss.  The first argument, purportedly grounded in the Supreme Court's ruling in *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007) (hereinafter, "*Twombly*"), is that Spear has not alleged "sufficient facts to show that they have any plausible entitlement to relief" and that Spear "offers nothing other than conjecture and coincidence in support of their claims."  Blair Br. at 1-2.  Nowhere in its brief does Blair even cite  the three published decisions by this Court since *Twombly* interpreting and applying that ruling.[3]   In the *Intel* case, this Court held that *Twombly* did not change the fundamental purpose of a motion to dismiss, which is "to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case."  *In re Intel Corp.*, 496 F. Supp. 2d at 407 (citing *Kost v. Kozakiewicz*, 1 F. 3d 176, 183 (3d Cir. 1993)).  What *Twombly* did was impose a "flexible plausibility standard" against which the complaint should be judged in order to

plaintiff's allegations regarding the claimed misconduct, the motion to dismiss directed to the whole of the complaint was denied).

[3]     *In re Intel Corp. Microprocessor Antitrust Litig.*, 496 F. Supp. 2d 404 (D. Del. 2007) (hereinafter, "*In re Intel Corp.*"); *Homsey v. Vigilant Ins. Co.*, 496 F. Supp. 2d 433 (D. Del. 2007); *Pfizer Inc. v. Ranbaxy Labs. Ltd.*, 525 F. Supp. 2d 680 (D. Del. 2007).

ascertain – accepting as true all allegations in the complaint and drawing all reasonable inferences in the light most favorable to the plaintiff – whether the factual allegations raise a right to relief "above the speculative level." *In re Intel Corp.*, 496 F. Supp. 2d at 407. The moving party bears the burden of demonstrating that dismissal is appropriate under Rule 12(b)(6). *Homsey*, 497 F. Supp. 2d at 436; *Pfizer Inc.*, 525 F. Supp. 2d at 685.

As demonstrated below in Section I, the Supplemental Complaint far surpasses these requirements. The Supplemental Complaint contains detailed and specific factual allegations, including, *inter alia*, details about the agreements with Valeant and co-defendant Blair concerning use and disclosure of Spear's confidential information, the communication to Blair of confidential information about Spear's plan to submit an ANDA for a generic fluorouracil cream based on a clinical trial for actinic keratosis (AK) only, communications between Valeant and Blair concerning the sale of Spear's dermatological product lines, the undisclosed business relationship between Blair and Valeant, Blair's disclosure of Spear's confidential information to Valeant, and, within days of Spear's planned ANDA filing, Valeant's filing of a Citizen Petition urging the FDA to reject ANDAs for generic fluorouracil cream based on clinical trials for AK only. It names the individual at Blair (Brian Scullion) who disclosed the confidential information to Valeant and the likely time period during which he leaked the information to Valeant (October 31, 2004 - December 21, 2004). The Supplemental Complaint also contains specific factual allegations demonstrating why it is not only plausible, but likely, that the actions taken by Valeant were based on Spear confidential information leaked to Valeant by Blair. These allegations include the fact that the arguments in the Citizen Petition were tailored precisely to criticize (and thus delay approval of) any ANDA that was based on the specific type of clinical trial conducted by Spear (that is, an AK only trial), and that in the 20 years since

4

Efudex® went off patent, Valeant had never before filed a Citizen Petition with respect to that product. Although Blair (and Valeant) are, of course, free to take the position in discovery and at trial that the timing and content of the Valeant Citizen Petition were a mere "coincidence" and not based on improperly leaked information concerning Spear's plans for filing an ANDA and the nature of its clinical trials, that is a factual issue that cannot be resolved on this motion – a point made clear by this Court's post-*Twombly* rulings.

Under the interpretation of *Twombly* advocated by Blair, no complaint for theft of trade secrets (or, for that matter, many other types of tort or contract claims) could ever survive a Rule 12(b)(6) motion unless the plaintiff -- prior to any discovery -- is already in possession of the "smoking gun." As discussed below, that is not what *Twombly* requires.

Although Blair criticizes the Supplemental Complaint as being based on "conjecture and coincidence," nowhere in its papers does Blair <u>ever</u> deny that it leaked Spear's confidential information to Valeant, even though Blair has been accused of rather serious misuse of confidential information. It is strange that at the very same time that it argues that the allegations in the Supplemental Complaint do not meet the "plausibility" requirements of *Twombly*, it nowhere denies in the face of those accusations that it improperly leaked confidential information to Valeant.

Blair's second argument is that the FDA's delay in approving Spear's ANDA is the superseding cause of Spear's injury and that the filing of the Citizen Petition (and the improper disclosure of the information upon which the Citizen Petition was based) cannot therefore be the proximate cause of Spear's injury. As demonstrated below in Section II, this argument ignores both the relevant law and the pleaded facts. Specifically, under Delaware law, a superseding event only breaks the chain of causation when the resulting harm was "neither anticipated nor

reasonably foreseeable by the original tortfeasor." *Delaware Elec. Co-Op v. Duphily*, 703 A.2d 1202, 1209 (Del. 1997). Here, the Supplemental Complaint not only alleges that the delay was reasonably foreseeable, but cites Congressional findings (which have given rise to legislation to curb the abusive filing of Citizen Petitions) that the Citizen Petition process has been used by pharmaceutical companies for the improper purpose of delaying FDA approval of generic products. Supplemental Complaint ¶ 44. That is, Congress has already determined that Citizen Petitions are routinely used for precisely the purpose alleged here by Spear.

Moreover, the fact that the FDA used its independent judgment in evaluating the Spear ANDA does not break the causal connection. There are a multitude of cases holding that a causal connection is not broken merely because the injuries were ultimately caused by the independent judgment of another. Specifically, at least three courts have held that delays in approval by the FDA do not constitute a superseding cause preventing a tortfeasor from being held liable for its improper behavior. This is particularly so here where the injury -- delayed approval -- is, statistically speaking, virtually an inevitable consequence of the filing of a Citizen Petition.

Further, in the lawsuit brought by Valeant in California seeking a preliminary injunction ordering the FDA to suspend approval of Spear's ANDA, *that Court found that Valeant's filing of the Citizen Petition had in fact delayed approval of Spear's ANDA*. Thus, not only was it foreseeable that Blair's actions would lead to a delay in the approval of Spear's ANDA, but another federal district court has already found that the filing of Valeant's Citizen Petition caused that precise result. Phillips Decl., Ex. B, p. 13, ¶ 57.

## STATEMENT OF FACTS[4]

A.    **The Efudex® Product and Spear's Development of Its Generic Efudex® fluorouracil Product**

Efudex,® a cream containing the active ingredient fluorouracil, is and has been sold by Defendant Valeant.  Supplemental Complaint ¶ 12.  Efudex® is approved for the topical treatment of actinic keratosis ("AK") and is also useful in the treatment of superficial basal cell carcinoma ("sBCC") in certain circumstances.  Supplemental Complaint ¶ 13.  Over 98% of the prescriptions written for Efudex® are dispensed to patients for use in the treatment of AK.  *Id*.  Although the patents on Efudex® expired more than 20 years ago, Valeant (and the predecessor owner from whom Valeant bought the product) has been selling the product without any generic competition since 1970.  Supplemental Complaint ¶ 13.  In 2004, Efudex® was Valeant's single largest revenue-producing product.  Supplemental Complaint ¶ 46.

Spear began developing its generic equivalent to the Efudex® product in about February 1999.  Supplemental Complaint ¶ 12.  Beginning in June of that year, Spear consulted directly with the FDA regarding the clinical studies required to support its ANDA for the product.  Supplemental Complaint ¶ 14.  Spear proposed a clinical trial addressing the treatment of AK to support bioequivalence for both Efudex® label indications and the FDA agreed that such a trial would prove bioequivalence to the brand product with respect to both AK and sBCC.  Supplemental Complaint ¶¶ 13-14.  Once it had received that guidance from the FDA, Spear planned, developed and implemented the clinical trial.  *Id*. at ¶ 14.  To date, Spear has invested more than $6 million on the development and testing of its generic Efudex® product.  Supplemental Complaint ¶ 15.

---

[4]    In the context of a motion to dismiss, all of the facts alleged in the Supplemental Complaint are to be taken as true, and all reasonable inferences are to be drawn in favor of the Plaintiff. *In re Intel Corp.*, 496 F.Supp. 2d. at 407.

### B.    Spear's Engagement of Blair to Locate a Buyer for the Tretinoin Product Line

As alleged in detail in the Supplemental Complaint, in 2004 Spear retained Defendant Blair to provide it with certain investment banking services in connection with the possible sale of another product line, tretinoin.  Supplemental Complaint ¶¶ 16-26.  On May 6, 2004, after initial general discussions, Spear and Blair executed a Confidentiality Agreement designed to permit the disclosure of confidential information to Blair and allow for proper evaluation of the opportunity.  Supplemental Complaint ¶¶ 18-19.  The Confidentiality Agreement required that Blair refrain from disclosing any of Spear's confidential information without Spear's prior written consent, and that the confidential information would not be used for any purpose outside of the possible transaction.  Supplemental Complaint ¶ 20.

Shortly thereafter, on or about August 2, 2004, Spear and Blair executed an Engagement Letter, which reaffirmed the obligations set forth in the Confidentiality Agreement, further defined the relationship between the parties, and detailed Blair's strategic plan for securing a party to the possible transaction.  Supplemental Complaint ¶¶ 25-27.  In the Engagement Letter, Blair agreed, *inter alia*, to inform Spear if it had a financial relationship with any of the parties contemplated as potential parties to the possible transaction.  Supplemental Complaint ¶ 26.

### C.    Spear's Communication of Trade Secrets and Confidential Information to Blair

During the course of negotiations regarding the terms of Blair's engagement, and after the Confidential Agreement had been executed, Spear began to share trade secrets and confidential information with Blair, through one of Blair's Vice Presidents, Brian Scullion ("Scullion").  Supplemental Complaint ¶¶ 21-24; 38.  On May 13, 2004, at their first face-to-face meeting, Spear informed Scullion that the generic Efudex® product was in Spear's product

development pipeline. Supplemental Complaint ¶ 38. Just before and just after communication of this information, Spear told Scullion that Spear did not want any of the parties considering the opportunity to be told which products were in Spear's pipeline. Supplemental Complaint ¶¶ 21; 23-24. Scullion received and acknowledged the request. Supplemental Complaint ¶ 22.

At the time the Engagement Letter was executed, on July 28, 2004, Spear shared additional confidential information with Scullion regarding the product pipeline. Supplemental Complaint ¶ 38. On October 31, 2004, after Valeant had executed the September 23, 2004 Evaluation Agreement, Spear sent Scullion an e-mail which reaffirmed that the Efudex® generic product was in development, that a single bioequivalency study had been completed, and that Spear expected to be filing the ANDA for that product in late November 2004. Supplemental Complaint ¶¶ 32; 38. In this very same e-mail, Spear again restated that Spear was providing the information solely for Scullion and he did not want Scullion to pass the information on to others. Supplemental Complaint ¶ 38. Spear also told Scullion that the Spear bioequivalency study was for AK. Supplemental Complaint ¶ 38. Thus, as of October 31, 2004, Scullion knew not only that Spear intended to file an ANDA for a generic version of Efudex®, but also when Spear anticipated making that filing, that Spear had conducted a single clinical trial, which related only to AK. Supplemental Complaint ¶ 38.

### D. Defendants' Relationship and Valeant's Evaluation of the Proposed Transaction

By September 30, 2004, Blair owned $1.7 million in Valeant stock. Supplemental Complaint ¶ 30. Neither this important fact, nor the nature and extent of the business relationship between Blair and Valeant, was communicated to Spear prior to Blair's September 3, 2004 proposal of Valeant as a potential investor. *Id.* Without full information, Spear approved Valeant's evaluation of the opportunity and the disclosure of certain confidential

information -- but not any information concerning Spear's pipeline (including Efudex®) -- to Valeant pursuant to a confidentiality agreement. Supplemental Complaint ¶¶ 31-32.

Scullion executed an Evaluation Agreement with Valeant on September 23, 2004. Supplemental Complaint ¶ 32. The Evaluation Agreement required that Valeant hold all of Spear's confidential information secret and not use any of the information for a purpose other than evaluation of the tretinoin purchase transaction. Supplemental Complaint ¶¶ 32-33. Spear was a third party beneficiary of the Evaluation Agreement, as expressly set forth in that agreement. Supplemental Complaint ¶ 34.

After the initial proposal of Valeant as an "A-list party" for evaluation of the proposed transaction, Blair communicated several updates with respect to Valeant's evaluation status. Supplemental Complaint ¶¶ 30; 35-37. During this same time period, Scullion met with Valeant a number of times, and spoke with Valeant's upper level management. Supplemental Complaint ¶ 39. On October 11, 2004, Blair told Spear that Valeant had received the memorandum and was evaluating its interest in the opportunity. Supplemental Complaint ¶ 35. That same update set forth October 14, 2004 as the "Indication Due Date" for Valeant. *Id.* On October 15, 2004, Scullion informed Spear that Valeant was dropping out of the prospective purchaser group based on pricing. Supplemental Complaint ¶ 36. That decision was confirmed when Spear received an October 18, 2004 update which listed Valeant as declining the offer. Supplemental Complaint ¶ 37.

### E.    Valeant's Filing of its Citizen Petition

By October 31, 2004, Blair had acquired at least the following confidential information from Spear: (1) Spear was in the process of developing a generic equivalent to Efudex®; (2) Spear had completed a single bioequivalence study demonstrating equivalence to the Efudex®

product in the treatment of AK; (3) that the study did not involve the treatment of sBCC; and (4) Spear expected that it would file its ANDA in late November 2004. Supplemental Complaint ¶ 38. Valeant was under an obligation to hold Spear's confidential information secret and to not use any of that information for any purpose other than evaluation of the proposed transaction. Supplemental Complaint ¶ 32.

On December 21, 2004, after being off patent some 20 years, Valeant filed a Citizen Petition with respect to the Efudex® product requesting that the FDA "refrain from approving an [Abbreviated New Drug] application unless an application includes a sBCC study." Supplemental Complaint ¶¶ 41; 43. Because the Citizen Petition was so narrow and its request so specific, the content of the Citizen Petition is evidence that Blair communicated Spear's confidential information to Valeant sometime after October 31, 2004 and before December 21, 2004, when the petition was filed. Supplemental Complaint ¶¶ 42-43. Such an inference is particularly appropriate since there is a wide variety of subjects on which Valeant could have filed a citizen petition. It could have, for example, filed a petition requesting: (1) that the FDA refrain from approving an ANDA unless that ANDA includes an AK study guessing that an sBCC study would be done by a generic firm (since, for example, statistically sBCC has a higher cure rate with Efudex® than does AK); or (2) that the FDA refrain from approving an ANDA unless that ANDA included testing in both sBCC and AK. Valeant chose neither approach. Instead, its Citizen Petition provides strong circumstantial evidence that Valeant had learned that Spear's study had been performed only in AK and not in sBCC, and that Spear had filed an ANDA based on that study.[5] This inference is bolstered by the fact that prior to that filing, in the

---

[5]    Although ultimately Spear did not file its ANDA until January 2005, Spear had told Blair in October 2004 that it intended to file its ANDA by late November. Supplemental Complaint ¶38. Whether, and when, an entity files an ANDA is non-public information.

11

more than *twenty years* since the drug had been off patent, Valeant had never before filed a Citizen Petition with respect to its Efudex® product.  Supplemental Complaint ¶ 42.

### F.  The Citizen Petition Process

Congress has recognized that the Citizen Petition process has been used by certain pharmaceutical companies for the improper purpose of delaying FDA approval of generic products, as demonstrated by the recent introduction, passage and enactment into law on September 27, 2007 of amendments to the Federal Food, Drug, and Cosmetic Act directing the FDA not to delay approval of ANDAs based on the filing of a Citizen Petition.  *See* Food and Drug Administration Amendments Act of 2007 § 914(a), 21 U.S.C. § 355.  Remedying past abuse of the Citizen Petition process was a primary motivation for passage of the legislation, as evidenced by the following comments from the legislative history of the Act and other related legislation before Congress at the time:

From legislative history of Food and Drug Administration Amendments Act of 2007:

> "Let us be clear: The citizen petition provision is designed to address attempts to derail generic drug approvals.  Those attempts, when successful, hurt consumers and the public health."  153 Cong. Rec. S11841 (daily ed. Sept. 20, 2007) (statement of Sen. Kennedy).

> "The bill also takes action on the abuse of citizen petitions. . . This procedure should be used to protect public health - but too often, it is subverted by those who seek only to delay the entry onto the market of generic drugs.  Even if the petitions are found to be meritless, they will have accomplished their mission - delaying access for consumers to safe and lower cost medicines."  153 Cong. Rec. S11938 (daily ed. Sept. 21, 2007) (statement of Sen. Kennedy).

From legislative history of the Citizen Petition Fairness and Accuracy Act of 2007 - introduced on January 4, 2007:

> "The legislation I introduce today. . . targets one particularly pernicious practice by brand name drug companies to impeded or block the marketing of generic drugs - abuse of the FDA citizen petition process."  153 Cong. Rec. S64 (daily ed. Jan. 4, 2007) (statement of Sen. Kohl).

"While this citizen petition process was put in place for a laudable purpose, unfortunately in recent years it has been abused by frivolous petitions submitted by brand name drug manufacturers (or individuals acting on their behest) whose only purpose is to delay the introduction of generic competition."  153 Cong. Rec. S64 (daily ed. Jan. 4, 2007) (statement of Sen. Kohl).

"Indeed, brand name drug manufacturers often wait to file citizen petitions until just before the FDA is about to grant the application to market the new generic drug solely for the purpose of delaying the introduction of the generic competitor for the maximum amount of time possible,  This gaming of the system should not be tolerated."  153 Cong. Rec. S65 (daily ed. Jan. 4, 2007) (statement by Sen. Kohl).

"Of the 21 citizen petitions for which the FDA has reached a decision since 2003, 20 -- or 95 percent of them -- have been found to be without merit.  Of these, ten were identified as "eleventh hour petitions," defined as those filed less than 6 months prior to the estimated entry date of the generic drug.  None of these ten "eleventh hour petitions" were found to have merit, but each caused unnecessary delays in the marketing of the generic drug by months or over a year. . ."  153 Cong. Rec. S65 (daily ed. Jan. 4, 2007) (statement by Sen. Kohl).

## G.    Activity Since Valeant Filed its Citizen Petition

Just after filing its Citizen Petition, on December 29, 2004, Valeant submitted an offer to Blair for the purchase of the tretinoin product line that it had previously rejected more than two months earlier.  Supplemental Complaint ¶¶ 37; 45.  Blair then presented the offer to Spear.  Supplemental Complaint ¶¶ 45-46.  This "offer" came just eight days after Valeant had filed its Citizen Petition.  Supplemental Complaint ¶ 45.

On January 3, 2005, Spear filed its ANDA seeking approval to manufacture and sell their generic Efudex® product.  Supplemental Complaint ¶ 40.  The FDA accepted the ANDA for filing on January 5, 2005.  *Id.*

Spear called the FDA to check on the status of its application in mid-April 2005.  Supplemental Complaint ¶ 47.  During that call, the FDA informed Spear that Valeant had filed a Citizen Petition requesting that ANDAs submitted with bioequivalence studies addressing only

13

the treatment of AK not be approved.  Supplemental Complaint ¶ 47.  The FDA told Spear that it was reviewing the Citizen Petition at that time.  *Id*.

In December 2006, Valeant began selling an authorized generic Efudex® product through a company called Oceanside.  Supplemental Complaint ¶ 50.  Until Spear began selling its product on April 11, 2008 – immediately following FDA approval of the Spear ANDA – this Valeant-sponsored authorized generic was the only generic Efudex® equivalent approved for marketing by the FDA.  *Id*.

On April 11, 2008, the FDA denied Valeant's Citizen Petition and granted final approval to the Spear ANDA.  *See* Supplemental Complaint, Exs. A and B.  Spear began selling the fluorouracil product that day.  In light of the FDA's actions, Spear filed an unopposed motion for leave to file a Supplemental Complaint on April 16, 2008.  The motion was granted and the Supplemental Complaint was filed on April 18, 2008.

On April 25, 2008, Valeant sued the FDA in the United States District Court for the Central District of California seeking an order directing the FDA to suspend approval of Spear's ANDA.  Spear intervened in that action on April 28, 2008.  After extensive briefing and oral argument, that Court denied Valeant's motion for a preliminary injunction on June 18, 2008.

## ARGUMENT

## I.    PLAINTIFF'S ALLEGATIONS MEET THE REQUIREMENTS OF FED. R. CIV. P. 8(a)

### A.    The Requirements of Fed. R. Civ. P. 8(a)

"Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Twombly*, 127 S. Ct. at 1964 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (internal quotations omitted).  In the context of a

claim made pursuant to Fed. R. Civ. P. 8(a)(2), courts "do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974; *Homsey*, 496 F. Supp. 2d at 435. This Court has characterized *Twombly* as imposing a "flexible plausibility standard" in pleadings analyzed for sufficiency under Fed. R. Civ. P. 8(a). *In re Intel Corp.*, 496 F. Supp.2d at 408 n.2 (citation omitted).

As the United States Court of Appeals for the Third Circuit has recognized, "an acceptable statement of the standard" for evaluation of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is "that courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and internal quotations omitted). Thus, "the pleading standard . . . 'does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234. That is, "[s]tandards of pleading are not the same as standards of proof." *Id.* at 246.

Here, contrary to Blair's assertions, Spear pleads ample specific facts which support each of the claims alleged in the Supplemental Complaint. Judged against the very flexible standards of Fed. R. Civ. P. 8(a), the Supplemental Complaint is sufficient and Blair's motion should be denied.

**B.    Each of the Arguments Offered by Blair Ignores Substantial Portions of the Supplemental Complaint and Is Based on an Improper Application of Fed. R. Civ. P. 8(a)(2)**

Blair begins its argument by stating "the central allegations regarding Blair's alleged disclosure of plaintiffs' confidential information, and how it allegedly led to plaintiffs' injury,

are pure speculation" and finds fault with the allegations regarding the specifics of the communication of that information to Valeant as being plead "on information and belief."  Blair Br. at 7.  In making this argument, Blair simply ignores the many allegations in the Supplemental Complaint that: provide the actual dates of communication of the specific confidential information from Spear to Blair; show there was ample means, opportunity and motive for Blair to communicate that information to Valeant; and provide a compelling basis for concluding that Blair conveyed that information to Valeant.[6]  *See, e.g.*, Supplemental Complaint ¶ 38 (detailing communications from Spear to Blair's agent, Scullion, on May 13, 2004, July 28, 2004 and October 31, 2004); Supplemental Complaint ¶ 32 (setting forth the date of the Evaluation Agreement); Supplemental Complaint ¶ 39 (setting forth details of Blair and Valeant's prior business relationship); Supplemental Complaint ¶ 42 (detailing the fact that Valeant's Citizen Petition was the sole citizen petition it has filed with respect to the Efudex® product, even though the product has been off patent for more than twenty years); Supplemental Complaint ¶ 43 (detailing the contents of Valeant's Citizen Petition and the reasonable inference that Valeant used improperly leaked Spear confidential information as its basis); Supplemental Complaint ¶ 45 (detailing Valeant's Offer Letter, leading to the reasonable inference that Blair had been

---

[6]    It is unrealistic to expect that Spear, alleging that its confidential information was communicated to a third party, would know, without any discovery, the exact dates and locations of those communications.  Nor is such pleading necessary -- even under Fed. R. Civ. P. 9(b) -- which dictates a heightened pleading standard.  *See, e.g., In re Student Fin. Corp.*, No. 03-507, 2004 U.S. Dist. LEXIS 4952, at *8 (D. Del. Mar. 23, 2004) (Farnan, J.) ("courts cannot expect plaintiffs to have access to information sufficient to satisfy a detailed application of Rule 9(b) in all cases"); *Homsey*, 496 F. Supp. 2d at 439 (Farnan, J.).  And, of course, the Supplemental Complaint does not allege a claim for fraud, and thus the heightened pleading requirements of Rule 9(b) do not apply here.  In fact, the conflation of the pleading standards set forth in Rule 8(a) and Rule 9(b) which Blair seems to support is one which *Twombly* specifically warned against.  *Twombly*, 127 S. Ct. at 1974 ("[W]e *do not* require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.") (emphasis added).

communicating to Valeant at least between the September 23, 2004 effective date of the Evaluation Agreement and the December 29, 2004 presentation of the Offer Letter). Thus, the facts alleged in the Supplemental Complaint, under the correct Fed. R. Civ. P. 12(b)(6) standard, accepted as true, with reasonable inferences drawn in favor of Spear, more than support the plausibility of the allegation that Blair leaked Spear's confidential information to Valeant. *Phillips*, 515 F.3d at 233.

Blair argues that the timing of the events alleged in the Supplemental Complaint do not support causation. Blair Br. at 8-9. Blair faults Spear for allegedly employing a *post hoc ergo propter hoc* fallacy. *Id*. at 9. Blair incorrectly argues, however, that a temporal sequence of events can never be evidence of causation. *Id*. The correct standard is that "temporal proximity *alone* will be insufficient to establish the necessary casual connection *when the temporal relationship is not 'unusually suggestive*.'" *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000) (citation omitted) (emphasis added.). Under this standard, the Supplemental Complaint meets the plausibility requirements of *Twombly* for two independently sufficient reasons.

*First*, the Supplemental Complaint alleges numerous facts *in addition to* the temporal sequence of events that support an inference that there is a causal connection between Blair and the injury Spear has suffered. For example, the Supplemental Complaint alleges that although Efudex® had been off patent for more than 20 years and Valeant had never filed a Citizen Petition with the FDA on any issue relating to Efudex®, Valeant chose to end its two decades of quiescence less than two months after Spear communicated to Blair its intention to file an ANDA for a generic version of Efudex®. Because the Congressionally-acknowledged purpose of citizen petitions filed by brand name companies is very often to block imminent generic

competition, a reasonable inference can be drawn from the timing of Valeant's Citizen Petition submission that Valeant had recently learned of the anticipated filing of an ANDA for a generic version of the Efudex® product.[7]

Moreover, the Citizen Petition filed by Valeant was specifically tailored to block or delay approval of an ANDA based solely on a clinical trial in AK patients. And, of course, that is precisely the study conducted by Spear – information that Spear disclosed to Blair in October 2004. Valeant could have filed a citizen petition requesting many other types of relief. *See infra* at Section E. The relief it sought, however, was precisely consonant with the information that had been leaked to Valeant by Blair. The reasonable inference from this factual allegation is that when Valeant filed its Citizen Petition it knew the nature of the clinical trial that had been conducted by the entity that intended to file an ANDA.[8]    Blair had been provided that

---

[7]    Nowhere in its opposition papers does Blair provide the Court with any plausible explanation as to why Valeant chose to file its Citizen Petition in December 2004.

[8]    Blair argues in a footnote that Valeant's Citizen Petition might have been directed against Taro Pharmaceutical Industries, which was marketing a generic version of Efudex® **solution** (Blair Br., at p. 10 n.7). There are two factual problems with that argument. *First*, Taro's ANDA for a generic version of Efudex® solution was approved on November 3, 2003. Blair Br., Ex. C, p. 3. Yet, Valeant did not file its Citizen Petition with respect to the Efudex® cream product until December 21, 2004 – more than a year later. Supplemental Complaint, ¶ 41. If Valeant had truly been concerned about Taro entering the market with a generic equivalent to its Efudex® cream product, it would have filed its Citizen Petition much earlier than it did. *Second*, Exhibit C to Blair's brief lists the therapeutic equivalency code for the Taro solution as an "AT" equivalent to the brand Efudex® solution. As set forth in the preface to the Orange Book, an "AT" rating for a topical product means that the "solution. . . contain[s] the same active ingredient in the same topical dosage form for which *a waiver of in vivo bioequivalence has been granted and for which chemistry and manufacturing processes are adequate to demonstrate bioequivalence*, are considered therapeutically equivalent [and] are coded **AT**." Food and Drug Administration Center for Drug Evaluation and Research Approved Drug Products with Therapeutic Equivalence Evaluations, 28th Edition, Preface, at p. 14, available at http://www.fda.gov/cder/ob/docs/preface/ecpreface.htm, accessed on September 2, 2008, Phillips Decl., Ex. D (emphasis added).The AT rating therefore indicates that Taro chose to demonstrate bioequivalence for its solution product *without*

information by Spear and it is not only plausible, but highly likely, that Blair provided this information to Valeant.  This is particularly so given the close -- and undisclosed -- relationship between Blair and Valeant (alleged in the Supplemental Complaint at ¶ 39) and the rather strange circumstances of Valeant purportedly changing its mind in making an offer to Spear (through Blair) -- the effect of which would be to enable it to continue to receive information about Spear -- after having decided against making such offer just two months before.  *See* Supplemental Complaint ¶¶ 36-37, 45-46.  Thus, the Supplemental Complaint does not rely upon temporal proximity *alone* in support of its allegations.

*Second*, even if the only allegations in the Supplemental Complaint to support causation were the temporal sequence of events -- which is not the case -- the reasonable inference to be drawn from the temporal sequence of events alleged is "unusually suggestive" here.  *Farrell*, 206 F.3d at 280.  The temporal events alleged in the Supplemental Complaint are set forth in the following chart:

---

conducting any *in vivo* bioequivalence testing.  A Citizen Petition directed against Taro rather than Spear would therefore likely have argued that the FDA should not approve an Efudex® cream product unless the ANDA applicant conducted *in vivo* testing rather than using the "AT" process that Taro had used to obtain approval of its Efudex® topical solution product.  But that is not the argument that Valeant made in its Citizen Petition. This is strong evidence that Valeant's filing was not directed against Taro.  Further, even if Blair's arguments regarding the Taro product were convincing, which they are not, the law does not require dismissal of a complaint if the defendant can demonstrate the possibility of an "alternative explanation" of the facts as they are alleged.  Rather, the law is, if the facts alleged demonstrate that, "under *any* reasonable reading of the complaint, the plaintiff may be entitled to relief," the complaint meets the pleading requirements of Fed. R. Civ. P. 8(a).  *Phillips*, 515 F.3d at 233 (emphasis added) (citation and internal quotations omitted).  Given a reasonable reading of all of the facts alleged in the Supplemental Complaint, Blair's argument that Valeant's Citizen Petition may have been directed against Taro should be rejected.

| **DATE** | **ALLEGED ACTIVITY** | **¶** |
|---|---|---|
| May 13, 2004 | Spear told Scullion that the generic Efudex® product was in its development pipeline. | ¶ 38 |
| September 23, 2004 | Valeant and Blair executed the Evaluation Agreement. | ¶ 32 |
| September 30, 2004 | Blair held $1.7 million in Valeant stock. | ¶ 30 |
| October 15, 2004 | On or about this date, Scullion told Spear that Valeant had been interested in the tretinoin opportunity, but thought it was too expensive. | ¶ 36 |
| October 18, 2004 | Blair communicated to Spear that Valeant had declined the offer. | ¶ 37 |
| October 31, 2004 | Spear sent Scullion an e-mail which indicated that, in support of the Efudex® ANDA, one 318 patient bioequivalence study had been completed.  Spear told Scullion that the clinical trial was for AK. | ¶ 38 |
| November 2004 | Spear communicated (on October 31, 2004) to Scullion that it expected to file its corresponding ANDA at the end of November. | ¶ 38 |
| December 21, 2004 | Valeant filed its Citizen Petition attempting to block approval of generic equivalents to its Efudex® product. | ¶ 41 |
| December 29, 2004 | After initially declining the offer, Valeant submitted the Offer Letter to Blair. | ¶ 45 |
| December 2006 | Valeant, in collaboration with Oceanside, launched an authorized generic of the Efudex® product, which, before April 11, 2008, was the only generic Efudex® product on the market. | ¶ 50 |

This sequence of events is certainly "unusually suggestive" of the alleged casual connection, and provides an independent basis for denying Blair's motion.  *See, e.g.*, *Farrell*, 206 F.3d at 280; *Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.*, 637 F.2d 105, 116 (3d Cir. 1980) ("Inferred factual conclusions based on circumstantial evidence are permitted . . . when . . . human experience indicates a probability that certain consequences can and do follow from the basic circumstantial facts.")[9]

---

[9]    The *Sweeney* case was decided on appeal of a judgment directing a verdict.  *Edward J. Sweeney & Sons, Inc.*, 637 F.2d at 108.  The legal standard in a motion to dismiss setting is quite different than the standard applicable when the jury is being asked to "infer [an] ultimate fact" from what the appeals court characterized as a "scanty record."  *Id.* at 116-

When all factual allegations in the Supplemental Complaint are accepted as true and all reasonable inferences are drawn in favor of Spear, the Supplemental Complaint is more than sufficient to meet the "flexible plausibility standard" discussed in *Twombly* and accepted by this court in the *Intel* case.  *Twombly*, 127 S. Ct. 1955; *In re Intel Corp.*, 496 F. Supp. 2d at 408 n.2.

## II.    BLAIR'S IMPROPER COMMUNICATION OF SPEAR'S CONFIDENTIAL INFORMATION WAS A DIRECT AND PROXIMATE CAUSE OF THE ALLEGED INJURY

Blair also argues that the intervening actions of the FDA (*i.e.*, its delay in approving Spear's ANDA) are a superseding cause of Spear's injuries.  Blair Br. at 11-16.  In making its argument, Blair ignores both the applicable substantive law and the proper standards on a motion to dismiss.  As set forth below, applying Delaware causation standards to the facts here and judging the Supplemental Complaint utilizing the correct standard applicable to a motion to dismiss leads to the conclusion that Blair's argument fails.

### A.    The Applicable Causation Standards

"Delaware recognizes the traditional 'but for' definition of proximate causation." *Duphily v. Delaware Elec. Co-Op., Inc.*, 662 A.2d 821, 828 (Del. 1995) (citations omitted).[10]

"A proximate cause is one that 'in natural and continuous sequence, *unbroken by any efficient intervening cause*, produces the injury and without which the result would not have occurred.'"

---

117. In addition to the fact that the case supports Spear's argument, this substantially different procedural posture is a further reason to find that Blair's reliance on the *Sweeney* case is misplaced.

[10]    Delaware law is applicable to Counts II, IV, V and VII, while Illinois law is applicable to Count I.  With respect to causation, Illinois law and Delaware law are the same, each applying a "but for" test as well as a proximate cause analysis based on foreseeability of the claimed harm.  *TIG Ins., Co. v. Giffin, Winning, Cohen & Bodewes, P.C.*, No. 00-2737, 2002 U.S. Dist. LEXIS 24469, *6 n.3 (N.D. Ill. Dec. 10, 2002).

*Delaware Elec. Co-Op. v. Duphily*, 703 A.2d 1202, 1209 (Del. 1997) (quoting *Culver v. Bennett*, 588 A.2d 1094, 1097 (Del. 1991)) (emphasis in original) (remaining citation omitted).

"The mere occurrence of an intervening cause, however, does not automatically break the chain of causation stemming from the original tortious conduct . . . there may be more than one proximate cause of an injury." *Duphily*, 662 A.2d at 829. "In order to break the causal chain, the intervening cause must also be a superseding cause." *Id.* The Delaware Supreme Court has held that an event is a superseding cause that breaks the chain of causation only when "the intervening act or event itself [was] neither anticipated nor reasonably foreseeable by the original tortfeasor." *Id.* (emphasis added) Moreover, if the intervening act of a third party "was reasonably foreseeable, the original tortfeasor is liable for his negligence because the causal connection between the original tortious act and the resulting injury remains unbroken." *Phifer v. E.I. du Pont de Nemours & Co.*, No. 03-0327, 2004 U.S. Dist. LEXIS 10727, at *4 (D. Del. June 7, 2004), *aff'd*, 2005 U.S. App. LEXIS 13489 (3d Cir. 2005) (quoting *Duphily*, 662 A.2d at 829)) (emphasis added). Finally, "[a]n event is foreseeable if a defendant should have recognized the risk of injury under the circumstances. It is irrelevant whether the particular circumstances were foreseeable." *Duphily*, 662 A.2d at 830 (citation omitted).

In this case, a delay in the approval of Spear's ANDA was both the reasonably foreseeable and intended result of Blair and Valeant's actions. Moreover, the United States District Court in the Central District of California, in a case brought by Valeant, has already held that Valeant's filing of its Citizen Petition in fact caused a delay in the approval of Spear's ANDA.

Under these legal principles, Blair's argument therefore fails.

**B.     Spear's Injury was Proximately Caused by Blair's Actions in Communicating the Confidential Information to Valeant**

Blair does not argue that the actions taken by Valeant constitute a superseding event breaking the chain of causation. Nor could it. Valeant and Spear were potential competitors with respect to the Efudex® product. The natural and expected consequence of Blair disclosing Spear confidential information to Valeant would be that Valeant would use that information to thwart Spear's efforts to obtain FDA approval and upon receiving FDA approval to sell its product.

Instead, Blair argues that the actions of the FDA in not approving the Spear ANDA are an intervening and superseding cause.

In order to qualify as a superseding cause, the delay in FDA approval of Spear's ANDA would have had to have been unforeseeable. *Phifer*, 2004 U.S. Dist. LEXIS 10727 at *4. *See also*, *Duphily*, 662 A.2d at 829. Here, however, not only was a delay in FDA approval a *foreseeable* consequence of Valeant's Citizen Petition, it was the *intended* consequence. The Supplemental Complaint alleges that Valeant's purpose in filing the Citizen Petition was to block the approval of Spear's ANDA. *See* Supplemental Complaint at ¶ 41-44. As discussed above at Section F., Congress has legislatively determined that the only purpose of many Citizen Petitions filed by brand name companies "is to delay the introduction of generic competition." *See* Supplemental Complaint at ¶ 44 quoting legislative history of the Citizen Petition Fairness and Accuracy Act of 2007. Indeed, so strong was the evidence of misuse of the Citizen Petition process to delay approval of ANDAs, that Congress passed -- and the President signed into law -- legislation designed to remedy that problem.

The FDA is an agency with limited resources. The natural consequence of a citizen petition is, as Congress has found, to delay final approval of any ANDA affected by that petition. And although many citizen petitions are frivolous (as Congress determined) whether a citizen

23

petition is frivolous or has some modicum of merit, both have the effect of delaying FDA approval.[11]

Further, there is a wide range of cases in which the exercise of "independent judgment" by a third party has been held not to constitute a superseding cause. *See, e.g., Kerman v. City of New York*, 374 F.3d 93, 126-127 (2d Cir. 2004) (defendant's action in taking plaintiff to mental institution found to be the proximate cause of plaintiff's injuries even though the plaintiff was kept there as a result of the physician's independent judgment. "[I]t is unquestionable here that [plaintiff's] detention in the hospital for some period of time was a foreseeable consequence of [defendant's] sending him there."); *Zahrey v. Coffey*, 221 F.3d 342, 352 (2d Cir. 2000) ("Even if the intervening decision-maker . . . is not mislead or coerced, it is not readily apparent why the chain of causation should be considered broken where the initial wrongdoer can reasonably foresee that his misconduct will contribute to an 'independent' decision that results in [plaintiff's harm]."); *Warner v. Orange County Dep't of Prob.*, 115 F.3d 1068, 1072-73 (2d Cir. 1996) (finding that because the independent official's activity was "neither abnormal nor unforeseen," that action did not qualify as a superseding cause.) (internal quotations and citation omitted); *Buenrostro v. Collazo*, 973 F.2d 39, 45 (1st Cir. 1992) ("Since a jury could conceivably find a causal nexus between the unlawful arrest and the consequent imprisonment, the particulars of the imprisonment issue will have to be litigated . . . the length and circumstances of [plaintiff's]

---

[11]    The passage of the recent Food and Drug Administration Amendments Act of 2007, codified at 21 U.S.C. § 355(q), imposed safeguards to ensure that such delay does not occur and that any filed Citizen Petition is not submitted for the primary purpose of delaying a potential competitor's ANDA approval. *See, e.g.*, 21 U.S.C. § 355(q)(1)(A) (requiring simultaneous review of any pending ANDA and filed Citizen Petition); 21 U.S.C. § 355(q)(1)(E) (permitting denial of a Citizen Petition at any point in review if it is determined that such was filed with the "primary purpose of delaying the approval of an application"); 21 U.S.C. § 355(q)(1)(F) (requiring *final* agency action on a Citizen Petition no later than 180 days after its submission).  That legislation, however, was not retroactive.

detention are best examined at trial as part of the determination of damages flowing from the allegedly unlawful arrest.") (citation omitted).  *See also*, *Egervary v. Young*, 366 F.3d 238, 250 (3d Cir. 2004), *cert. denied*, 543 U.S. 1049 (2005) (reconciling the cases by determining that, if the intervening official act is based on some problem or improper conduct with respect to the facts presented to the official, the official's subsequent act does not qualify as a superseding cause); *Hector v. Watt*, 235 F.3d 154, 161 (3d Cir. 2000) (recognizing that "proximate cause is hardly a rigorous analytic tool" and that "there is a great deal of tension in the caselaw about when official conduct counts as an intervening cause.").

With respect to specific cases directed to whether actions by the FDA constitute a superseding cause, at least three courts, in ruling on *motions to dismiss*, have found that the FDA's activities (including the FDA's delay in approving applications before it) do not constitute a superseding cause.[12]  *See, e.g.*, *In re Wellbutrin SR/Zyban Antitrust Litig.*, 281 F. Supp. 2d 751 (E.D. Pa. 2003); *Dr. Reddy's Labs., Ltd. v. aaiPharma Inc.*, 66 U.S.P.Q.2d 1878 (S.D.N.Y. 2002); *Eli Lilly & Co. v. Am. Cyanamid Co.*, No. 95-536, 2001 U.S. Dist. LEXIS 212 (S.D. Ind. Jan. 1, 2001).  Each of these cases is discussed below.

---

[12]    In a footnote, Blair references the *Noerr-Pennington* doctrine in an attempt to "explain" causation.  Blair Br., p. 13 n.9.  The underlying purpose of the *Noerr-Pennington* doctrine is to protect the innocently exercised First Amendment rights of would be petitioners from the threat of liability.  Blair fails to mention that petitioning activity is not shielded in an unlimited fashion – that is, if there is wrongdoing associated with the petitioning activity, the petitioner is not shielded from liability because proximate causation exists. *City of Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S. 365, 381, 111 S. Ct. 1344, 113 L.Ed.2d 382 (1991) (Activity can be rendered a sham if delaying the competitor's entry to the market is achieved by use of the process itself rather than the result sought through the process.); *Livingston Downs Racing, Ass'n, Inc. v. Jefferson Downs Corp.*, 192 F. Supp.2d 519, 535 (M.D. LA 2001) ("A common thread running through the *corpus juris* of the Noerr-Pennington doctrine is that, to qualify for protection, the defendant must employ ethical and legitimate means when petitioning.") (citations omitted).

In a case with facts quite analogous to those here, a court in the Southern District of New York determined that the defendant's argument that the FDA's actions were the superseding cause of the plaintiff's injuries was "meritless."  *Dr. Reddy's Labs., Ltd.*, 66 U.S.P.Q.2d at 1888. In that case, the plaintiff, DRL, and the defendant, aaiPharma, had a relationship pursuant to which DRL "would supply bulk products, including omeprazole, to aaiPharma so that aaiPharma could determine whether to file an ANDA for a finished dosage product, which would contain DRL's bulk product."  *Id*. at 1882.  Pursuant to that arrangement, aaiPharma agreed not to use DRL's confidential information "for purposes other than for the filing of an ANDA."  *Id*.  After receiving bulk omeprazole from DRL, aaiPharma tested the bulk product and then allegedly shared those results with AstraZeneca, the manufacturer of the reference listed drug.  *Id*. AstraZeneca "used the data received from aaiPharma to attempt to delay DRL's launch of generic omeprazole by submitting the data to the FDA" in a Citizen Petition.  *Id*. at 1883.  In response to the Citizen Petition, "the FDA requested that DRL run tests costing hundreds of thousands of dollars, delaying DRL's approval and adversely impacting DRL's entitlement to Hatch-Waxman exclusivity."  *Id*. (internal quotations omitted).  In its motion to dismiss, aaiPharma argued, much like Blair does here, that the FDA's decision, rather than its own allegedly improper disclosure of confidential information, was the proximate cause of DRL's injuries because, *inter alia*, it does not "control" the FDA.  *Id*. at 1888.  After stating the general requirements of Fed. R. Civ. P. 8(a), the Court held that DRL's allegation of AstraZeneca's use of "the data that aaiPharma misappropriated from DRL to attempt to delay DRL's launch of generic omeprazole" and the allegation that that action resulted in the FDA's requirement that DRL run additional testing, "sufficient[ly] plead DRL's alleged injury, notwithstanding the fact

that aaiPharma does not have control over the FDA." *Dr. Reddy's Labs., Ltd.*, 66 U.S.P.Q.2d at 1888 (internal quotations omitted).

Here, it is much the same – just as was alleged in the *Dr. Reddy's* case, Blair, in breach of preexisting agreements, shared confidential information with the NDA-holder. Supplemental Complaint ¶ 41. Just as was alleged in *Dr. Reddy's*, Valeant used that improperly disclosed information as a basis for its Citizen Petition. Supplemental Complaint ¶ 42-43. Just as was alleged in *Dr. Reddy's*, Spear has been injured as a result of the improper disclosure of its confidential information and the resulting delay in approval of its ANDA. Supplemental Complaint ¶ 49-50. These alleged facts are more than sufficient to withstand a motion to dismiss. *Dr. Reddy's Labs., Ltd.*, 66 U.S.P.Q.2d at 1888.

In *Wellbutrin*, a court in the Eastern District of Pennsylvania applied a very similar analysis with respect to the legal effect of actions by the FDA. In that case, the defendant moved to dismiss an antitrust claim arguing "that the superseding cause for [plaintiff's] failure to enter the market is the company's inability to obtain FDA approval." The Court rejected this argument, holding that:

> Defendants' ability to pose a plausible and legally permissible version of events that explains why generic manufacturers of Wellbutrin SR have not yet entered the market does not compel this Court to grant their motion. Rather, because this is a motion to dismiss, the Court must draw all reasonable inferences in favor of Plaintiffs.

*In re Wellbutrin SR/Zyban Antitrust Litig.*, 281 F. Supp. 2d at 757. The Court then held a reasonable inference existed that the brand companies' filing of frivolous lawsuits "directed resources away from FDA approval . . [and] that this reallocation of funds resulted in a delay of FDA approval." *Id*. at 757. Thus, "the failure of [the generic] to obtain FDA approval, was

itself caused by Defendants' filing of the allegedly frivolous lawsuits," leading to the court's denial of the motion to dismiss. *Id*.

The same logic requires denial of Blair's motion. If Blair had not improperly disclosed Spear's confidential information to Valeant, Valeant would not have filed a Citizen Petition, and the FDA would have approved Spear's ANDA far earlier than it did. Supplemental Complaint ¶¶ 42, 49 (16.6 month average approval time for ANDAs; here Spear's ANDA was pending for 39.1 months -- a 22.5 month delay over the average -- prior to approval).[13] Indeed, the United States District Court for the Central District of California, in rejecting Valeant's request that it order the FDA to suspend Spear's ANDA approval, made a specific factual finding that: "Valeant's citizen petition delayed the approval of Spear's ANDA." Phillips Decl., Ex. B, p. 13, ¶ 57.

In *Eli Lilly & Co.*, 2001 U.S. Dist. LEXIS 212, at *14-15, the brand company argued "that any delay in [the generic's] entry into the generic cefaclor market was proximately caused by the slow FDA approval process, not by" its action. The court rejected this argument, denying the brand company's motion to dismiss. In that case, Lilly had entered into agreements, prior to the expiration of the patent at issue, with every bulk active ingredient and intermediate compound supplier except one for the production of cefaclor by representing that it did not have the manufacturing capacity to produce its own active to keep pace with demand. *Id*. at *4-6. Zenith, the generic company, began to search for a supplier of the bulk active product and was forced to utilize the sole company with which Lilly had not entered into an agreement. *Id*. at *7.

---

[13]    Because the Spear ANDA was the first ANDA with Efudex® cream as the reference listed drug, and "there [we]re no blocking patents or exclusivities," the Spear ANDA would have been expedited for review in the absence of Valeant's Citizen Petition and thus, would have likely been approved in less time than the average. Phillips Decl., Ex. E, p. 3 n.13; p. 18.

Zenith alleged that, because that company was not FDA-approved to sell the bulk in the United States, Zenith's entry into the generic market was delayed by roughly five months. *Id*. at *7-8. Lilly responded by arguing that the FDA's failure to approve that supplier was the proximate cause of Zenith's injury. The court rejected this argument, holding that Zenith had sufficiently plead causation and should have the opportunity to prove the allegations. *Id*. at *16.

The cases Blair cites to support its theory that the FDA's delay in approval of Spear's ANDA is the superseding cause of Spear's injuries are readily distinguishable. In *Barr Labs., Inc. v. Quantum Pharmics, Inc.*, 827 F. Supp. 111 (E.D.N.Y. 1993), the factual scenario was much different than that here. Barr's product was not the sole generic available at the time and, although Barr argued that the defendant Quantum's allegedly false ANDA filing led to its injuries, there were multiple layers of behavior which had to be assumed in order to demonstrate proximate causation. The FDA first had to approve the allegedly false ANDA, then all of the customers who had purchased defendant's product would have had to purchase Barr's product when there were other available generic choices. *Id.* at 116. The court's ruling was based more on the fact that it was "equally probable that Quantum's customers would have purchased a generic drug produced by one of Barr's competitors" than it was based on the FDA's actions. *Id*.

Similarly, in *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460 (D. N.J. 1998), Lilly's argument that it was injured as a result of a generic company's misrepresentations to the FDA which resulted in approval of the generic's application was rejected by the Court. Just as in the *Barr* case, "numerous events had to occur before defendants' acts caused Lilly to lose sales." *Eli Lilly & Co.*, 23 F. Supp. 2d at 485. The lack of causation was based on, *inter alia*, the fact that several generics existed at the time and pharmacies' stocking and physicians' prescribing

decisions were additional intervening causes.[14]  *Id.*  Finally, in *Dow Chem. Co. v. Exxon Corp.*,
30 F. Supp. 2d 673,  (D. Del. 1998), although the PTO's activity in granting the patent was part
of the causation chain, "Dow's customers and business affiliates [could] choose whether or not
to pursue business opportunities with Dow and/or purchase or license Dow's. . . [t]echnology."
*Dow Chem. Co.*, 30 F. Supp. 2d at 695-96.  Here, Blair's actions in sharing Spear's confidential
information with Valeant led to the filing of Valeant's Citizen Petition which, as another district
court has held, delayed Spear's ANDA approval and led to the loss of a substantial amount of
time on the market.  Thus, no superseding cause broke the chain of causation between Blair's
breach and Spear's claimed injury.

"The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to
resolve disputed facts or decide the merits of the case."  *In re Intel Corp.*, 496 F. Supp. 2d at 407
(Farnan, J.).  The discussion above demonstrates that the issue of whether a subsequent event
(such as the action of a government agency) is a superseding cause is *extremely* factually driven,
further lending support to the conclusion that resolution of this issue on a motion to dismiss is
improper.

**III.    UNDER THIRD CIRCUIT PRECEDENT, EVEN IF THE SUPPLEMENTAL
         COMPLAINT WERE SUBJECT TO DISMISSAL, THIS COURT SHOULD
         PERMIT SPEAR TO AMEND THE SUPPLEMENTAL COMPLAINT**

In the event that this Court were to find that the Supplemental Complaint does not satisfy
the liberal pleading standards of Rule 8, the Third Circuit has "instructed that . . . a district court
must permit a curative amendment, unless an amendment would be inequitable or futile."

---

[14]    Additionally, both *Barr* and *Eli Lilly & Co.*, 23 F. Supp. 2d 460 were cases in which the
        claims at issue were RICO claims.  "Proximate cause is interpreted narrowly in RICO
        claims."  *Eli Lilly & Co.*, 23 F. Supp. 2d at 483 (citations omitted).  Thus, it is not even
        certain that the proximate cause analysis of these RICO-based cases is valid in a non-
        RICO action such as the case at bar.

*Phillips*, 515 F.3d at 236 (citations omitted).  The opportunity to amend must be provided "even if the plaintiff does not seek leave to amend."  *Id*. at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)).  Here, Spear requests that if the Court finds the Supplemental Complaint to be in any way deficient, that it be permitted leave to amend to cure any such deficiency.

## **CONCLUSION**

For the foregoing reasons, Blair's motion to dismiss should be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)
Rodger D. Smith, II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
rsmith@mnat.com

*Of Counsel:*

Steven Lieberman
Jason M. Shapiro
Lisa N. Phillips
ROTHWELL, FIGG, ERNST
   & MANBECK, P.C.
1425 K Street, N.W.
Suite 800
Washington, DC  20005
(202) 783-6040

*Counsel for Plaintiffs Spear Pharmaceuticals, Inc.*
*and Spear Dermatology Products, Inc.*

September 2, 2008
2470521

31

## CERTIFICATE OF SERVICE

I hereby certify that on September 2, 2008 I electronically filed the foregoing with

the Clerk of the Court using CM/ECF, which will send notification of such filing to:.

> Richard L. Horwitz, Esquire
> David E. Moore, Esquire
> POTTER ANDERSON & CORROON LLP
>
> Gregory V. Varallo, Esquire
> Steven J. Fineman, Esquire
> RICHARDS, LAYTON & FINGER, P.A.

I further certify that I caused to be served copies of the foregoing document on

September 2, 2008 upon the following in the manner indicated:

Richard L. Horwitz, Esquire                    *VIA ELECTRONIC MAIL*
David E. Moore, Esquire                              *and HAND DELIVERY*
POTTER ANDERSON & CORROON LLP
Hercules Plaza – 6th Floor
1313 North Market Street
Wilmington, DE  19801

Richard de Bodo, Esquire                       *VIA ELECTRONIC MAIL*
Siegmund Gutman, Esquire
David G. Chang, Esquire
HOGAN & HARTSON L.L.P.
1999 Avenue of the Stars – Suite 1400
Los Angeles, CA  90067

Michael L. Kidney, Esquire                     *VIA ELECTRONIC MAIL*
HOGAN & HARTSON L.L.P.
555 Thirteenth Street, N.W.
Washington, DC  20004-1109

Gregory V. Varallo, Esquire                    *VIA ELECTRONIC MAIL*
Steven J. Fineman, Esquire                           *and HAND DELIVERY*
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 King Street
Wilmington, DE  19801

Walter C. Carlson, Esquire                                    *VIA ELECTRONIC MAIL*
Hille R. Sheppard, Esquire
Kevin C. Pecoraro, Esquire
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL  60603


*/s/ Jack B. Blumenfeld*
_____
Jack B. Blumenfeld (#1014)