IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SPEAR PHARMACEUTICALS, INC. and | : |
| SPEAR DERMATOLOGY PRODUCTS, | : |
| INC., | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | : Civil Action No. 07-821-JJF |
| | : |
| WILLIAM BLAIR & COMPANY, LLC, | : |
| and VALEANT PHARMACEUTICALS | : |
| INTERNATIONAL, | : |
| | : |
| Defendants. | : |

Steven Lieberman, Esquire; Jason M. Shapiro, Esquire and Lisa N.
Phillips, Esquire of ROTHWELL, FIGG, ERNST & MANBECK, PC,
Washington D.C.
Jack B. Blumenfeld, Esquire and and Rodger D. Smith, II, Esquire
of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware.

Attorneys for Plaintiffs Spear Pharmaceuticals, Inc. and Spear
Dermatology Products, Inc.

Richard de Bodo, Esquire; Siegmund Gutman, Esquire and David G.
Chang, Esquire of HOGAN & HARTSON LLP, Los Angeles, California.
Michael L. Kidney, Esquire of HOGAN & HARTSON LLP, Washington,
D.C.
Jeffrey B. Valle, Esquire; Steven M. Ragona, Esquire and Thomas
P. Friedman, Esquire of VALLE & ASSOCIATES, Los Angeles,
California.
Richard L. Horwitz, Esquire and David E. Moore, Esquire of POTTER
ANDERSON & CORRON LLP, Wilmington, Delaware.

Attorneys for Defendant Valeant Pharmaceuticals International.

Walter C. Carlson, Esquire; Hille R. Sheppard, Esquire and Kevin
C. Pecoraro, Esquire of SIDLEY AUSTIN LLP, Chicago, Illinois.
Gregory V. Varallo, Esquire and Steven J. Fineman, Esquire of
RICHARDS, LAYTON & FINGER, PA, Wilmington, Delaware.

Attorneys for Defendant William Blair & Company LLC.

## MEMORANDUM OPINION

April $\mathcal{J}$, 2009
Wilmington, Delaware

Farnan, District Judge.

Pending before the Court are William Blair & Company, LLC's Motion To Dismiss The Supplemental Complaint (D.I. 22) and Valeant Pharmaceuticals International's Motion To Dismiss The Supplemental Complaint (D.I. 24.). For the reasons discussed, the Motions will be denied.

## I.   PROCEDURAL BACKGROUND

On December 17, 2007, Plaintiffs Spear Pharmaceuticals, Inc. and Spear Dermatology Products, Inc. (collectively, "Spear"), filed this action alleging claims against Defendants William Blair & Company LLC ("Blair") and Valeant Pharmaceuticals International ("Valeant") for breach of contract, breach of the implied covenant of good faith and fair dealing, trade secret misappropriation, unjust enrichment, and negligence. On July 9, 2008, Defendants filed the instant Motions, requesting that the Court dismiss Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.   FACTUAL BACKGROUND

Plaintiffs Spear Pharmaceuticals, Inc. and Spear Dermatology Products, Inc. are Florida corporations engaged in the development and sale of generic dermatological pharmaceuticals. (D.I. 18 ¶¶ 2-3.) Defendant Valeant is a Delaware corporation engaged in the manufacture and marketing of pharmaceutical

1

products.   (Id. ¶ 5.)   Defendant Blair is an investment firm that
is a Delaware limited liability corporation.   (Id. ¶¶ 4.)

Between February 2000 and September 2005, Plaintiffs sought
and received FDA approval to sell five different forms of generic
Retin-A® tretinoin cream products, which are used in the
treatment of acne.   (Id. ¶ 11.)   During the spring of 2004,
Plaintiffs decided they wished to begin selling these products to
a third party.   (Id. ¶ 10, 16.)   To this end, in April 2004,
Plaintiffs engaged Blair to evaluate business opportunities
connected to the purchase of Plaintiffs' generic tretinoin
products and possibly identify a third party purchaser.   (Id. ¶¶
16-18.)   As part of this relationship, in May 2004, Plaintiffs
and Blair executed a Confidentiality Agreement, which required
Blair to hold in confidence information regarding Plaintiffs'
products.   The Confidentiality Agreement further prohibited Blair
from using such confidential information for any purpose other
than the evaluation of potential business opportunities involving
Plaintiffs' generic drug products.   (Id. ¶¶ 19-20.)

During roughly the same time frame, Plaintiffs were engaged
in the development of a generic equivalent to the Efudex®
product, a product unrelated to tretinoin that was originally
developed by Valeant and that is used in the treatment of actinic
keratosis ("AK") and superficial basal cell carcinoma ("sBCC").
(Id. ¶¶ 12-13, 16.)   Plaintiffs allege that in May of 2004   -

2

shortly after execution of the Confidentiality Agreement – it informed a Blair vice president, Brian Scullion, that the generic Efudex® product was in its development pipeline. (Id. ¶ 38.) In response to Scullion's request for additional information, Plaintiffs allege that they disclosed numerous specifics regarding their generic Efudex® product, including that Spear had conducted only a single clinical trial directed to the treatment of only AK and not sBCC. (Id.)

Plaintiffs allege that following this disclosure, Scullion met with Valeant throughout the summer and fall of 2004 to discuss, in addition to other potential business opportunities, a transaction involving Plaintiffs. (Id. ¶ 39.) During this time frame, the William Blair Growth Fund held over $1.7 million in Valeant Stock. (Id.) Plaintiffs further allege that during these meetings, Scullion disclosed confidential information regarding Blair's generic Efudex® product, including that Blair planned to soon file an abbreviated new drug application ("ANDA") with the FDA seeking approval to manufacture a certain form of their generic Efudex®. (Id. ¶ 41.) In connection with the disclosure of this information, Blair executed an "Evaluation Agreement" with Valeant, which, according to Plaintiffs, required Valeant to maintain information regarding Plaintiffs and their products in confidence and use it solely for the purpose of evaluating a possible business transaction. (Id. at ¶ 33.)

3

Notably, the Evaluation Agreement explicitly stated that the agreement was "for the benefit of" Plaintiffs. (Id.)

Plaintiffs allege, however, that, in response to the receipt of the confidential information, Blair filed a Citizen's Petition with the FDA seeking to block the approval of any generic Efudex® product. The basis of the Citizen Petition was that generic Efudex® products unsupported by a clinical study directed to the treatment of sBCC - the precise studies Plaintiffs had not done - should not be approved. (Id. ¶¶ 41-43; see also D.I. 23, Exh. A (Valeant's Citizen Petition).) According to Plaintiffs' Complaint, "[t]he specificity of the requested relief reflects that Valeant had learned not only of Plaintiffs' confidential information with respect to Plaintiffs plan for filing an ANDA, but also the precise nature of the clinical trial they had conducted." (Id. ¶ 43.) In January 2005, Plaintiffs filed their ANDA seeking approval to sell one form of their generic Efudex® product. (Id. ¶ 40.) Alleging that Valeant's Citizen Petition, which was allegedly precipitated by Blair's breach of the Confidentiality Agreement and Valeant's breach of the Evaluation Agreement, delayed approval of the ANDA by roughly three years, Spear initiated this action. (See id. ¶ 49.)

## III. Legal Standard

In considering a motion to dismiss filed under Federal Rule
of Civil Procedure 12(b)(6), the Court must accept all factual
allegations in a complaint as true and consider them in the light
most favorable to plaintiff. Erickson v. Pardus, 551 U.S. 89
(2007). A complaint must contain "'a short and plain statement
of the claim showing that the pleader is entitled to relief,' in
order to 'give the defendant fair notice of what the . . . claim
is and the grounds upon which it rests.'" Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 555 (2007) (interpreting Fed. R. Civ. P.
8(a)). A complaint need not contain detailed factual
allegations; however, "a plaintiff's obligation to provide the
'grounds' of his 'entitlement to relief requires more than labels
and conclusions, and a formulaic recitation of the elements of a
cause of action will not do.'" Id. (citations omitted). The
"[f]actual allegations must be enough to raise a right to relief
above the speculative level on the assumption that all of the
complaint's allegations are true." Id. at 547.

## IV. DISCUSSION

Defendants contend the Plaintiffs' Complaint should be
dismissed pursuant to Rule 12(b)(6) for failure to state a claim
upon which relief may be granted. Both Defendants raise
essentially the same two core arguments in support of their
Motions.   Specifically, Defendants contend that (1) Plaintiffs'

Complaint is fatally speculative, and (2) that the Food and Drug Administration's (FDA) independent decisions regarding the time frame for approving Plaintiffs' ANDA were the proximate cause of any alleged injury, not Valeant's filing of a Citizen Petition. Additionally, Valeant contends that it is not liable because its Citizen Petition filing was privileged activity under the First Amendment pursuant to the Noerr-Pennington doctrine. The Court will consider each of these arguments in turn.

## A.    Whether Spear's Complaint Is Fatally Speculative

### 1.    The Parties' Contentions

Defendants contend that Spear's allegations are "pure speculation that rest on unwarranted factual inferences that are pleaded solely on information and belief." (D.I. 23 at 7; see also D.I. 25 at 8("[T]he pivotal assertions in Spear's complaint lack the heft of specific, well-pled facts that go beyond supposition and speculation.").) According to Defendants, Plaintiffs' allegations that Scullion leaked Blair confidential information and that Valeant timed its Citizen Petition specifically to target Plaintiffs' ANDA are unsupported by any genuine facts. (D.I. 23 at 8-9; D.I. 25 at 7-9.) To the extent the timing of events and surrounding circumstances appear suspicious, Defendants contend that such suspicion is inadequate to make a showing of a plausible claim for relief. (D.I. 23 at 11; D.I. 25 at 9.) And, in any event, Defendants urge that there

6

is a legitimate explanation for the allegedly suspicious circumstances. For instance, Defendants note that before Valeant even filed its Citizen Petition, the FDA had already approved an ANDA by Taro Pharmaceuticals, an unrelated third party, for an Efudex® solution and that an ANDA for a generic Efudex® cream would likely be forthcoming from Taro. Rather than attempting to block the approval of Spear's ANDA, an alternative explanation for Valeant's petition, Defendants contend, is that Valeant was simply responding to a competitive threat from another company, such as Taro. (D.I. 23 at 10 n.7; D.I. 25 at 8-9.) Similarly, with regard to the fact that Valeant's Citizen Petition specifically asked the FDA to delay the approval of ANDAs on generic Efudex® unless they were supported by clinical studies on sBCC – the specific studies Spear had not done – Blair contends that this request is only reasonable given that sBCC is a much more serious disorder than AK. (D.I. 23 at 10 n.8.)

In response, Plaintiffs contend that their Complaint does, in fact, set forth detailed factual allegations. (D.I. 28 at 15; D.I. 29 at 14.) Specifically, Plaintiffs maintain that their Complaint "provide[s] the actual dates of communication of the specific confidential information to Blair; show[s] there was ample means, opportunity, and motive for Blair to communicate that information to Valeant; and provide[s] a compelling basis for concluding that Blair conveyed that information to Valeant."

7

(D.I. 28 at 16; D.I. 29 at 16.) To the extent Defendants
complain of Plaintiffs relying too heavily on a suspicious
temporal sequence of events, Plaintiffs note that although such
evidence is generally insufficient to establish causation on its
own, it is incorrect to say that a temporal sequence of events
cannot constitute evidence of causation. (D.I. 29 at 17.) And,
in any event, Plaintiffs contend that they allege much more than
an unusually suggestive sequence of events. (Id. at 19.) For
instance, Plaintiffs note that prior to filing the Citizen
Petition, Valeant had not filed any other Citizen Petition
pertaining to Efudex® in the 20 years that Efudex® had been off
patent. (Id. at 17.) Likewise, Plaintiffs point out that
Valeant's Citizen Petition was tailored to block or delay
approval of Efudex® ANDAs that failed to include a clinical trial
on sBCC patients, the precise studies Plaintiffs had not done.
(Id. at 18.) According to Plaintiffs, this fact further refutes
Defendants' argument that Valeant's Citizen Petition was directed
at halting Taro's proposed Efudex cream. Had Valeant filed its
Citizen Petition with this intent, Plaintiffs contend, Defendant
would have instead argued to the FDA that generic Efudex® creams
should not be approved without in vivo bioequivalence testing,
the precise studies that Taro had not done. (D.I. 28 at 18.)

8

## 2. Decision

Instructive here is the Supreme Court's recent decision in
Bell Atlantic Corp. v. Twombly, 550 U.S. 544 127 S. Ct. 1955
(2007), which Defendants rely upon heavily. In Twombly, the
plaintiffs brought an action alleging that a group of telephone
and Internet service providers conspired to restrain trade in
violation of the Sherman Antitrust Act., 15 U.S.C.S. § 1.
Twombly, 550 U.S. at 550. Specifically, plaintiffs alleged that
defendants failed to compete with one another and took additional
actions designed to undermine the growth of upstart competitors.
Id. at 550-51. However, the plaintiffs' complaint rested merely
on descriptions of parallel conduct (i.e., that defendants all
engaged in substantially the same conduct) and not independent
allegations of actual agreement among the defendants, which is
required for a conspiracy. Id. at 565. In these circumstances,
the Supreme Court explained, the sufficiency of the complaint
"turn[ed] on the suggestions raised by [parallel conduct] when
viewed in light of common economic experience." Id. Put another
way, at issue in Twombly was whether a complaint that alleged
conspiracy but "lacked factual context suggesting agreement, as
distinct from identical, independent action," should be
dismissed. Id. at 541.

In holding that such a complaint should be dismissed, the
Supreme Court emphasized a "plausibility standard," stating that

9

this required a complaint alleging conspiracy to, at least, raise a reasonable expectation that discovery will reveal evidence of illegal agreement. Id. at 556. In other words, the plausibility standard requires a complaint to "possess enough heft to show that the pleader is entitled to relief." Id. at 557 (citations omitted). In the context of a conspiracy complaint, mere allegations of parallel conduct come close to stating a claim, but require factual enhancement with allegations suggesting an agreement to fully cross the line from possibility to plausibility. Id. at 557. On the facts present in Twombly, the Supreme Court held that plaintiffs had failed to meet this plausibility standard. As the Supreme Court explained, the defendants parallel action had a "natural explanation" as a "natural, unilateral reaction" to a threat from upstart competitors, particularly against the backdrop of the Telecommunications Act of 1966, which was designed to facilitate the market entry of such competitors. Id. at 566-67. "[T]here was just no need for joint encouragement to resist the 1996 Act," the Supreme Court added, and, in these circumstances, allegations of parallel conduct were insufficient to nudge a complaint for conspiracy across the line from conceivable to plausible. Id. at 566, 570.

The Third Circuit has since provided additional gloss on Twombly by its decision in Phillips v. County of Allegheny, 515

F.3d 224, 231 (3d Cir. 2008). After recognizing the relevance of the antitrust context in which Twombly was decided, the Third Circuit addressed the issue of whether Twombly altered the general Rule 12(b)(6) standard. Phillips, 515 F.3d at 230-31. The Third Circuit confirmed that there was much that Twombly did not change. Specifically, after Twombly, plaintiffs still were not required to present detailed factual allegations in support of their complaint so long as they gave defendants fair notice of what their claim was the facts that supported it. Id. The Third Circuit further explained that on a 12(b)(6) motion, the facts alleged in the complaint should still be taken as true. Id. To the extent Twombly set forth new pleading requirements, those requirements were embodied in the Supreme Court's "plausibility standard," which the Third Circuit understood as requiring plaintiffs to provide a "showing." Id. at 233-34. A "showing," the Third Circuit explained, merely called for plaintiffs to set forth enough facts in their complaint to raise a reasonable expectation that discovery will reveal evidence supporting the claim. Id. at 234.

Applying Twombly and Phillips to the facts of this case, the Court concludes that Plaintiffs' Complaint should not be dismissed as fatally speculative. The Court finds that the Complaint at issue, unlike the Complaint in Twombly, includes allegations substantial enough to justify opening the door to

discovery.   Indeed, unlike the complaint in Twombly, which

"mentioned no specific, time, place, or person involved in the

alleged conspiracies,"   id. at 565 n.10, the Complaint here

identifies the following core information:

- The identity of the individual (i.e., Brian Scullion) that allegedly leaked Spear confidential information in breach of the confidentiality agreement.   (D.I. 1 ¶ 41.)
- The time frame during which this confidential information was leaked.   (See id. ¶¶ 39-41.)
- The specific content of the leaked information. (Id. ¶ 38.)
- An opportunity and motive for leaking the confidential information (i.e., the William Blair Growth Fund's ownership of $1.7 million in Valeant stock).   (See id. ¶ 39.)
- The precise manner in which the specific leaked confidential information was allegedly used to harm Spear.   (Id. ¶¶ 41-44.)
- A temporal sequence of events supporting a connection between Defendants and Spears harm, including that Valeant had not filed a Citizen Petition in the 20 years Efudex® had been off patent, yet chose to do so roughly two months after Spear communicated to Blair its intention to file an ANDA for generic Efudex® (Id. ¶¶ 38, 42; see also D.I. 29 at 20.)

In the Court's view, this constitutes enough "heft" to

justify entry into discovery, especially where, as here, the

discovery is unlikely to be the massive endeavor typically

associated with antitrust and patent cases, for instance.   See

Limestone Dev. Corp. v. Vill. of Lemont, 520 F.3d 797, 803-04

(7th Cir. 2008) ("If discovery is likely to be more than usually

costly, the complaint must include as much factual detail and

argument as may be required to show that the plaintiff has a
plausible claim.").

With respect to Defendants' position that Valeant's Citizen
Petition may have been directed against Taro Pharmaceuticals, the
Court remains unconvinced that this is a natural alternative
explanation - like the one in Twombly - that is so compelling as
to warrant dismissal for failure to state a claim.  Indeed,
Valeant's Citizen Petition was not filed until more than a year
had passed after Taro filed its ANDA.  In deciding the instant
Motion, the Court must draw the reasonable inference in
Plaintiffs' favor that Valeant would have acted sooner had it
intended to respond to Taro through a Citizen Petition.
Likewise, the Court notes that the allegedly leaked information -
pertaining to Plaintiffs' failure to carry out a clinical study
on sBCC - corresponds with the position Valeant took in its
Citizen Petition.  Given the current procedural posture and facts
asserted by Plaintiff, the Court cannot conclude that this is
also a natural position to take with respect to Taro's ANDA.

Accordingly, the Court deny Defendants' Motions.

## B.  Whether Plaintiffs Adequately Alleged Causation

### 1.  The Parties' Contentions

The second main argument Defendants raise in support of
their Motions to Dismiss is that the Food and Drug
Administration's (FDA) independent decisions regarding the

13

approval of Spear's ANDA were the proximate cause of Spear's alleged injury, not Valeant's filing of a Citizen Petition. (See D.I. 23 at 11; D.I. 25 at 12.) As Blair puts it, "any connection between Blair's alleged breach (the supposed provision of confidential information to Valeant) and plaintiffs' alleged injury (alleged lost sales due to the FDA's evaluation of their ANDA taking longer than the average time of 16.6 months) is severed by the intervening actions of the FDA." (D.I. 23 at 12.) Defendants point out that Plaintiffs' Complaint states that the average time it takes the FDA to act on an ANDA is 16.6 months. Thus, according to Valeant, it is not surprising that the FDA could, in some circumstances, choose – on its own – to take substantially longer than 16.6 months to review an ANDA. Such a delay could be explained, Valeant contends, by the FDA's docket overflowing with applications. Alternatively, it could simply have been the case that Plaintiffs' ANDA presented issues that warranted serious consideration. (Id.) Valeant argues that if the FDA found its petition to be non-meritorious, it could have rejected it immediately. In these circumstances, Defendants contend that the FDA's actions constituted a "superseding" cause of any delay in the approval of Plaintiffs' ANDA and that Plaintiffs have failed to adequately allege proximate causation. (Id. at 13; D.I. 25 at 13.). Valeant further contends that Plaintiffs' alleged failure to adequately plead proximate

14

causation leads also to a failure to adequately allege standing. (D.I. 25 at 3.)

In response, Plaintiffs contend that Defendants apply the wrong causation standard. Plaintiffs argue that the mere occurrence of an intervening cause (i.e., the independent judgment of the FDA) does not automatically break the chain of causation that stems from the tortious conduct (i.e., Valeant's improper use of Spear confidential information in its Citizen Petition). (D.I. 28 at 21-22.) The causal chain is only broken, Spear contends, if the intervening cause is a "superseding cause." (Id.) However, to qualify as a superseding cause, the cause must be unforeseeable. (Id.) According to Plaintiffs, the delay of their ANDA was not only foreseeable, but intended. (Id. at 22.) Indeed, as Plaintiffs note, in a lawsuit brought by Valeant seeking a preliminary injunction suspending the approval of Plaintiffs' ANDA, the court found that Valeant's filing of the Citizen Petition had in fact delayed approval of the ANDA. (Id. at 5-6.) Plaintiffs further maintains that Congress has recognized that the only purpose of many Citizen Petitions filed by brand name companies is to delay the introduction of generic competition. (Id. at 23 (citing D.I. 18 at ¶¶ 41-44.))

## 2. Decision

In support of their respective causation arguments, the parties rely on competing case law. In the Court's view, Spear's cases, in particular Reddy's Labs. v. Aaipharma Inc., No. 01 Civ. 10102, 2002 U.S. Dist. LEXIS 17287, at \*32 (S.D.N.Y. Sept. 13, 2002), are more on point. In Reddy's Labs, the plaintiff, a generic drug manufacturer, alleged that the defendant shared the results of tests on plaintiff's generic drug product with a brand name drug manufacturer, which then used the information in an FDA Citizen Petition for the alleged purpose of delaying the launch of plaintiff's generic drug. Reddy's Labs, 2002 U.S. Dist. LEXIS 17827 at \*12-\*13. Arguing that plaintiff "fail[ed] to demonstrate . . . any proximate causal connection between any furnishing of information to the FDA and a decision by the FDA to ask [plaintiff] for additional information or testing," defendant moved to dismiss plaintiff's claims for, inter alia, trade secret misappropriation and tortious interference with economic advantage. (Id.) Despite the fact that defendant had no control over the FDA, the court in Reddy's Labs held that defendant's arguments were "meritless," explaining that plaintiff had adequately pled an injury that resulted from defendant's actions. Though not explicitly addressing whether the independent action of the FDA was an unforeseeable, "superseding cause," the conclusion that it was not so unforeseeable as to preclude

16

plaintiff from being able to state a claim was implicit in the court's decision.

Similar to Dr. Reddy's, Plaintiffs allege they were harmed when Valeant, via its communications with Blair, misappropriated confidential information that they then relied on in an FDA Citizen Petition for the purpose of delaying the introduction of Plaintiffs' generic drug product. Following Dr. Reddy's, the Court cannot at this stage conclude that Valeant has not adequately stated a claim for relief. This is especially so in light of the fact that Congress has recognized that the Citizen Petition process is often abused to delay the introduction of generic drugs, (see D.I. 18 at ¶¶ 44), and that one court has already concluded that "Valeant's citizen petition delayed the approval of Spear's ANDA." (See D.I. 30, Exh. B at ¶ 57.)[1]

In considering the cases cited by Defendants, the Court finds them less applicable than the cases relied upon by Plaintiffs. For instance, in Barr Labs. v. Quantum Pharmics, Inc., 827 F. Supp. 111 (E.D.N.Y. 1993), the plaintiff, a generic

---

[1] Furthermore, the Court notes that it detects some tension between (1) Defendants' argument regarding the possibility of Valeant's Citizen Petition being directed to Taro pharmaceuticals and (2) Defendants' argument that Valeant's Citizen Petition cannot be a proximate cause of any harm to Plaintiffs. Indeed, if, as Defendants contend, Valeant might have filed its Citizen with the intent of delaying the introduction of a generic Efudex® cream by Taro, then the Court is skeptical of Defendants' arguments that "simply by filing a petition, Valeant could not force the FDA to do anything with respect to Spear's ANDA." (D.I. 25 at 12.)

drug manufacturer, brought a RICO claim alleging that defendants, competing generic drug manufacturers, illegally procured permission to take their generic drugs to market based on false ANDA filings with the FDA.  Barr Labs., 827 F. Supp. at 113.  The plaintiff alleged harm in the form of lost market share due to competition from defendants' generic drugs, which never should have been allowed on the market.  However, the plaintiff in Barr Labs also faced competition from a number of other generic drug manufacturers, all of whom were legitimately marketing their drugs and all of whom could have provided the sales that plaintiff allegedly lost to defendant.  Id. at 116.  In these circumstances, the court in Barr Labs held that defendants' losses, if any, depended on the intervening actions of not just the FDA but plaintiff's customers.  Id.  In particular, the court in Barr Labs expressed concern that considering the role of plaintiff's competitors would require the trier of fact "to speculate as to the number of [defendant's] customers who would have purchased [plaintiff's] products, rather than the generic drugs produced by other manufacturers, had [defendant's] products not been sold in the marketplace."  (Id.)  This, in turn, had the potential to "open the door to massive and complex damages litigation . . . ."  (Id.)  Notwithstanding the fact that

18

"proximate cause is interpreted narrowly in RICO claims,"[2] the case at bar is thus distinguishable from Barr Labs. because this additional – and highly complex – intervening layer of causation involving Plaintiffs' customers is simply not present.  The other core cases that Defendants rely upon,[3] may, in the Court's view, be distinguished from the instant case on similar bases.

In its reply brief, Blair also relies on Egervary v. Young, 366 F.3d 238, 246 (3d Cir. Pa. 2004), for the proposition that "when the immediate cause of injury is the decision of an independent government actor, causation is severed, and foreseeability has no role to play in the analysis."  (D.I. 35 at 13.)  However, in Egervary, the Third Circuit was reviewing a district court's grant of summary judgment, which is a distinct procedural posture from the case at bar.  Furthermore, in the Court's view, the government conduct in Egervary that broke the chain of causation cannot fairly be compared to the government conduct at issue here.  In Egervary, a district court judge issued an order permitting the U.S. Marshal to seize and remove a child from the United States so that he could be returned to his mother in Hungary without first giving notice to plaintiff, the

---

[2] Eli Lilly & Co. v. Roussel Corp., 23 F. Supp. 2d 460, 483 (D.N.J. 1998)

[3] These cases include Eli Lilly & Co. v. Roussel Corp., 23 F. Supp. 2d 460, 483 (D.N.J. 1998) and Dow Chem. Co. v. Exxon Corp., 30 F. Supp. 2d 673, 694 (D. Del. 1998), both of which were also RICO cases.

19

child's father. Egervary, 366 F.3d at 240.  The Third Circuit
explained that "there [was] no set of facts under which the Order
issued by the District Judge was proper" and that "[n]o statement
or omission by defendants could possibly have made the issuance
of such an order appropriate." Id. at 250.  The Egervary court's
conclusion that the judge's conduct broke the chain of causation
hinged specifically on this fact (i.e., on the fact that the
judge failed "to properly apply the governing law and
procedures"). See id. at 250-51.  The Third Circuit explained
that where a judicial officer correctly applies governing law and
procedure, but nevertheless arrives at an erroneous conclusion
because he or she is misled as to the relevant facts, the causal
chain is not broken. Id. at 250.  Thus, the causal chain is only
broken where the government actor fails to function as expected.

     Here, unlike as in Egervary, there is no evidence that the
FDA failed to function as expected in response to Valeant's
Citizen Petition.  On the contrary, in light of the congressional
recognition regarding the abuse of the Citizen Petition process,
(see D.I. 18 at ¶¶ 41-44), there is reason to believe that the
FDA acted precisely as one would expect in response to Valeant's
Citizen petition.  To the extent there is a dispute on this
point, for the purposes of the instant Motions, the Court must
resolve the dispute in favor of Plaintiffs.  The Court further
notes that the logic of Egervary is fully consistent with the

view, advanced by Spear, that a superseding cause must be an unforeseeable cause. In the Court's view, a district judge's issuance of an order for which there were "no set of facts" and "[n]o statement or omission by defendants" that could have made the order proper is a highly unforeseeable event, and hence properly viewed as a superseding cause.

Accordingly, the Court will not dismiss Plaintiffs' Complaint on the grounds that Plaintiffs cannot prove causation as a matter of law. Likewise, the Court will not dismiss Plaintiffs' Complaint for failure to allege facts that establish standing.

## C. Whether The Complaint Should Be Dismissed Becase Valeant's Citizen Petition Is Privileged Activity Under the First Amendment And/Or Noerr-Pennington Doctrines

In addition to the two key arguments discussed above, Valeant argues for dismissal based on the First Amendment and Noerr-Pennington doctrine. Briefly, Valeant contends that the right to petition the government is privileged by the First Amendment and/or Noerr-Pennington doctrine and that it thus cannot be held liable for any effects resulting from the Citizen Petition. This is so, Valeant contends, even if the Citizen Petition was based on misappropriated information or information used in breach of the Evaluation Agreement. (D.I. 34 at 12-13.) Thus, Valeant's position seems to be that even if it misappropriated trade secrets or breached the terms of the

21

Evaluation Agreement, it is nevertheless immunized from liability because the tool it used for ultimately bringing harm to Plaintiffs was a government agency.

The Court has reviewed the numerous cases cited by Valeant on this issue and concludes that none of them support this proposition.  The cases cited by Valeant all involve situations where "all that [was] alleged [was] that plaintiffs by various acts induced or sought to induce a department of the federal government to take certain actions."  Sierra Club v. Butz  349 F.Supp. 934, 939 (N.D. Cal. 1972).  In these cases, the courts rejected the plaintiffs' attempts to merely repackage such lawful attempts to influence government as claims for, among other things, tortious interference with prospective business advantage, abuse of process, and violation of antitrust laws. Here, however, Plaintiffs state bona fide claims for trade secret misappropriation, breach of contract, and unjust enrichment. Plaintiffs' Complaint supports these claims with facts pertaining to the contract that was breached, the information that constituted a trade secret, and how Valeant benefitted through misappropriation of Plaintiffs' confidential information.  (See D.I. 18 at ¶¶ 65-71, 79-91.)  Valeant is not relieved from liability for these claims merely because they then used a petition to a government agency as the mechanism for allegedly harming Plaintiffs.  Here, the rule that applies is, as

22

Plaintiffs contend, that the "[u]se of trade secrets in violation of a confidentiality agreement or in breach of a fiduciary duty is not protected by the First Amendment." Ford Motor Co. v. Lane, 67 F. Supp. 2d 745, 750 n.6 (E.D. Mich. 1999).

Accordingly, the Court will not dismiss Plaintiffs' Complaint on the grounds that Valeant's Citizen Petition constituted privileged conduct.